(No. 12751.—Judgment affirmed.)

THE T. WILCE COMPANY, Appellant, *vs.* THE ROYAL IN-DEMNITY COMPANY, Appellee.

*Opinion filed October 27, 1919.*

1. BONDS—*when application for indemnity bond forms part of the contract.* An application for a bond of indemnity against loss through the dishonesty of an employee, which contains written answers by the employer to questions concerning the business and the employee, forms a part of the contract of indemnity, where the bond provides that "certain statements in writing relative to the employee and to other things connected with this bond" shall be a part of the agreement, and in a suit on the bond the employer can not allege want of knowledge as to the truth of said statements.

2. SAME—*what defense is available under general issue.* Where the application for a bond of indemnity against loss through the dishonesty of an employee contains written answers by the employer to questions concerning the employee and is made a part of the contract of indemnity, in a suit on the bond the plaintiff is not bound to set out in the declaration the statements made by it to procure the bond or to prove the truth of the statements, but such facts are matters of defense available to the defendant under a plea of the general issue, with notice of special matters to be proved and relied upon.

3. PRACTICE—*when court may amend form of verdict at subsequent term.* Where the jury returns a verdict finding the issues for the plaintiff but assessing the "defendant's" damages at a certain sum, and a motion for a new trial is made and continued to the next term, the court has power to correct the mistake in the verdict at the subsequent term before overruling the motion for a new trial and entering judgment.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding.

BULKLEY, MORE & TALLMADGE, for appellant.

THOMAS BATES, and SEYMOUR EDGERTON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, as plaintiff, sued appellee on a bond given by appellee to indemnify appellant against loss through the dishonesty of William E. Aten, an employee of the appellant, while in the performance of his duties as cashier and head book-keeper of appellant for the period between April 1, 1913, and April 1, 1915. The bond was to indemnify appellant from loss through the fraud or dishonesty of Aten to an amount not exceeding $10,000. Appellant recovered a judgment in the circuit court for $169.86, which on appeal to the Appellate Court was affirmed. A certificate of importance having been granted, plaintiff below has prosecuted an appeal to this court.

Appellant is a corporation engaged in the manufacture of hardwood flooring. Aten had been continuously in its employ since 1906. Early in March, 1913, Aten made application to appellee to furnish a surety bond for him to his employer in the sum of $10,000. Thereupon appellee requested appellant to make a statement in answer to certain inquiries about information appellee desired concerning Aten, on a blank form prepared and furnished for that purpose. Answering the questions on said form, appellant stated it was a corporation engaged in manufacturing hardwood flooring and that Aten was its cashier and head book-keeper and that it would pay the premium for the bond. Appellant further stated in answer to questions, that Aten would be required to deposit in the bank, to the account of the appellant, all cash received each day except $25 to $50 for change. The questions and answers in said statement, from 12 to 16, inclusive, are as follows:

12.—(a) At what intervals will appli-
cant's books, accounts, stocks
and securities be inspected
and audited and verified with
funds on hand or in bank?    (a) 1st of each month.

   (b) * * * * * * * * * *

   (c) * * * * * * * * * *

   (d) By whom will above audits
and inspection be made?    (d) W. M. Davis, Clerk.

13.—(a) When were applicant's ac-
counts last examined?    (a) March 1st.

   (b) Were they at that time in
every respect correct?    (b) Yes.

14.—(a) Has applicant always faith-
fully, honestly and punctu-
ally accounted to you for all
moneys and property hereto-
fore under his control or cus-
tody as your employee?    (a) Yes.

   (b) Are applicant's accounts at this
date in every respect correct,
and proper securities, property
and funds on hand to balance
his accounts?    (b) Yes.

15.—(a) Is applicant now in debt to
you?    (a) No.

   (b) * * * * * * * * * *

16.—Have you ever sustained loss through
the dishonesty of anyone hold-
ing the position of the appli-
cant or holding a similar posi-
tion?    No.

To this statement is appended the following:

"It is agreed that the above answers shall be warranties, and
shall constitute the basis of and form a part of said bond applied
for, or any other bond that may be executed by the Royal In-
demnity Company to the undersigned upon applicant above named,
in said position, or any renewal or continuation of such bond.

"Dated at Chicago, Ill., this 7th day of March, 1913.

THE T. WILCE CO., *Employer.*
(Seal.)    E. HARRY (HARVEY) WILCE,
*Official Capacity, Prest."*

289 — 25

Upon receipt of the statement of appellant, appellee issued the indemnity bond sued on. The bond bears date of March 12, 1913, and among its provisions are that appellant (the employer) had delivered to appellee "certain statements in writing relative to the employee and to other things connected with this bond, which, together with any other statements in writing hereafter made by the employer to the surety relative to any such matters, are and shall be a part of this agreement (hereinafter called the bond) or any continuation or continuations hereof and shall be deemed warranties. * * * Now, therefore, in consideration of the warranties aforesaid and of the payment of the premium of seventy-five 00/100 dollars, it is hereby agreed that, subject to the terms, conditions and limitations set forth in this bond, compliance with which shall be a condition precedent to the right of the employer to recover hereunder, the surety will make good to the employer such pecuniary loss of the employer's money, funds or other personal property, not exceeding ten thousand 00/100 dollars, as shall be sustained by the employer by any act or acts of fraud or dishonesty committed by the employee personally during the period" covered by the bond.

In April, 1914, appellant notified appellee that Aten was short in his accounts, and, after causing an audit to be made of his books, demanded of appellee $8423.33. It was disclosed by investigation that prior to making the statements by appellant to appellee and the issuing of the bond sued on, Aten was a defaulter to appellant in the sum of about $19,000 and that his shortage began soon after entering appellant's employment. In addition to the audit of Aten's books by appellant, appellee also caused them to be audited by accountants employed by it, and it is undisputed that at the time the bond became effective, April 1, 1913, Aten had appropriated in round numbers $19,000 of his employer's money and had concealed it from his employer by a system of fictitious book-keeping.

The declaration in the suit filed by appellant against appellee contained two special counts and the common counts. The declaration was filed in October, 1914. On November 12, 1914, before pleading to the declaration, the appellee tendered appellant the amount of premium paid for the bond and its renewal, and interest on the premium, a total of $159, which the appellant refused to accept. Appellee pleaded the general issue, with notice that on the trial it would prove in defense certain matters particularly set out. The substance of the special matters proposed to be proved was that the answers, or at least some of them, made by appellant to appellee about Aten before the bond was given, and claimed to be warranties, were false. The notice stated appellee would also prove it had tendered appellant the full amount of premium paid for the bond and the renewal, and interest thereon, and that the same was a continuing tender.

The greater portion of appellant's argument is devoted to the propositions that the statements made by appellant in the paper called defendant's "Exhibit A," being the information asked of the employer of Aten by appellee before issuing the bond, are not part of the bond because not in any way identified by anything in the bond as part thereof, and that they can only be connected with the bond by extrinsic parol evidence; that appellee not having by special pleas denied the contract sued on and set out in the declaration, was estopped to offer said exhibit as part of the instrument sued on; that, even if said exhibit be construed as part of the bond, there is nothing in that paper or the bond to show the parties intended, if it should be discovered that Aten was a defaulter at the time the bond was made, that that fact should render the bond void *ab initio;* and also that the exhibit is a collateral document not admissible in evidence as a defense of fraud, because the bond is a sealed instrument.

In *Treat* v. *Merchants Life Ass'n*, 198 Ill. 431, the court said: "The application for the insurance is referred to in

the insurance contract and made a part thereof, and under the repeated decisions of this and other courts it is binding upon the beneficiaries named in the policy. Where the intent to make the application a part of the policy clearly appears, the court, no matter what the phraseology may be, will read the application into the contract of insurance and construe the contract of insurance and the application together,"—citing authorities.

In *United States Fidelity and Guaranty Co.* v. *First Nat. Bank,* 233 Ill. 475, it was said that a bond of a guaranty company to indemnify employer against loss from dishonesty of an employee is an insurance contract and subject to the rules applied to insurance policies generally, and not the rules applied to sureties for accommodation.

In *Spence* v. *Central Accident Ins. Co.* 236 Ill. 444, the court considered whether the statement by the insured of his age in his application for a policy was a warranty or a representation. The statement was not in the policy nor was it by reference thereto made part of the policy. It was held not to be a warranty, but the court said: "The usual method adopted by insurance companies to make the statements and stipulations embraced in the application a part of the policy is to refer to the application and by express terms make it a part of the contract, or they are declared to be the basis upon which the contract is made, or the policy is declared to be issued upon the faith thereof. (May on Insurance,—2d ed.—sec. 158.) Where this course is pursued there is no room for doubt."

Appellant expressly agreed that its answers in "Exhibit A" should constitute the basis of and form part of the contract for the bond applied for or any renewal of it. The bond itself refers to the exhibit as "certain statements in writing relative to the employee and to other things connected with this bond," together with other statements in writing made by the employer to the surety, and says they "shall be a part of this agreement" and "shall

be deemed warranties." The bond further states that "in consideration of the warranties aforesaid" and the payment of the premium, appellee agrees, subject to the conditions and terms set forth, to make good to appellant any loss of money through the fraud or dishonesty of the employee, not exceeding $10,000.

It will be seen by the portion of "Exhibit A" above set out that appellant stated the books and accounts of Aten would be inspected, audited and verified with the funds on hand or in bank the first of every month; that this would be done by W. M. Davis, who was also an employee of appellant; that Aten's accounts were last examined the 1st of March and were in every respect correct; that Aten had always honestly and punctually accounted for all moneys in his control or custody; that Aten was not indebted to appellant, and that appellant had never sustained loss through the dishonesty of anyone holding Aten's position. Aten's books and accounts had not been inspected, audited and verified March 1, and were not inspected, audited and verified by W. M. Davis or anyone else the first of each month after the bond was issued. At the time the statements were made Aten had embezzled $19,000 of appellant's money. The statements made by appellant were untrue. Obviously, the information contained in the statements was of vital importance in inducing appellee to execute the bond. Some of the statements must have been known by appellant to be untrue, and as to others, whether known by appellant to be untrue or not, it assumed knowledge of the facts and can not now allege want of knowledge. (*Hartford Life and Annuity Ins. Co.* v. *Gray,* 91 Ill. 159.) Clearly, under the decisions in this State the statements formed a part of the contract. Appellee did not deny the execution of the contract, but it denied it was bound by it because of the false warranties which formed a part of it. Appellant was not required to set out in its declaration the statements made by it to procure the bond to be executed or to prove the

truth of the statements. (*Phenix Ins. Co.* v. *Stocks,* 149 Ill. 319.) This was matter of defense and was available to appellee under the general issue and notice of special matters to be proved and relied on as a defense. The court did not err in admitting in evidence "Exhibit A." *Gould* v. *Magnolia Metal Co. 207* Ill. *172.*

There was no reversible error in the court's rulings in the admission of testimony to prove that Aten was in default to appellant prior to March 7, 1913. This proof was made, in part, by the testimony of accountants who had examined his books and gave the result of their examination. It is very possible some questions and answers were objectionable, but in the main we find no meritorious cause of complaint. There can be no doubt Aten was a defaulter several thousands of dollars when the application for the bond was made. The president of appellant testified Aten confessed to him his defalcations in April, 1914, and how he managed to conceal them, and it is undisputed his peculations had been carried on several years before the bond was given.

There was no reversible error in the action of the trial court in giving the three instructions on behalf of appellee.

The court submitted to the jury two forms of verdict. One form was, if they found the issues for the plaintiff to assess the plaintiff's damages "at the sum of . . . . . . . dollars." The other form, if they found for defendant, was simply, "We, the jury, find the issues for the defendant." The verdict returned by the jury found the issues for the plaintiff and assessed "the defendant's damages at the sum of $150, with interest thereon from October 15, 1914, to date, amounting to $19.86, and including costs of suit." The court overruled a motion by appellee to cause the jury to retire to correct their verdict, and appellant thereupon entered its motion for a new trial. The verdict was returned and motion for new trial made on June 8, 1917, which was during the June term of court. The motion was

not then acted upon but was continued to the July term, at which term the court corrected the verdict to read, "assess the plaintiff's damages at the sum of $169.86." The court then overruled the motion for a new trial and rendered judgment for appellant on the verdict as corrected, for $169.86. These rulings of the court, appellant insists, were erroneous and without warrant of law. We think it apparent to reasonable minds that the jury meant and intended to assess plaintiff's damages at the amount of the premiums paid, which were $150 and interest thereon. Appellee admitted liability in that sum and had tendered payment. The defalcation of Aten for the period covered by the bond and its renewal was proved to be several thousand dollars. It is plain from the verdict that the jury did not find appellee liable for any part of Aten's shortage. While they found the issues for the plaintiff and the damages recoverable were $150 and interest, they inadvertently assessed the damages as defendant's damages instead of plaintiff's. Clearly, after finding the issues for the plaintiff the jury could not have intended to assess damages against it in favor of defendant, in face of the fact that defendant admitted its liability to plaintiff for the premiums paid and interest thereon. What the jury's verdict meant was that the jury found the issues for the plaintiff and assessed its damages against the defendant, and not that it assessed damages in favor of defendant against plaintiff, in whose favor the issues were found. The court should have allowed appellee's motion that the jury retire and put their verdict in form, but we have no doubt of the power and authority of the court to put the verdict in form. While that action of the court was not at the term at which the verdict was returned, the motion for a new trial was made at that term and continued to the next term. No judgment was rendered on the verdict until after it had been put in form by the court, and the court did not lose jurisdiction. (*Italian-Swiss Agricultural Colony* v. *Pease,* 194 Ill. 98.)

The verdict contained the substance of a good return and the court had power to amend it in matter of form. *Law v. Sanitary District of Chicago*, 197 Ill. 523.

The judgment is affirmed.

*Judgment affirmed.*