## Auto Truck Steel Body Company, Appellant, v. Chicago Bonding & Insurance Company, Appellee.

### Gen. No. 25,174.

1. INDEMNITY, § 9*—*what is nature of indemnity bond.* A bond issued by a guaranty company to indemnify an employer against loss from the dishonesty of an employee is an insurance contract and subject to the rules of construction applicable to insurance policies generally.

2. INDEMNITY, § 9*—*how bonds are construed.* Contracts of guaranty insurance are made in order to furnish indemnity to the assured, and they should be liberally construed to accomplish such purpose.

3. INDEMNITY, § 6*—*what is effect of misrepresentation.* A misrepresentation of a material fact in reliance upon which a policy of fidelity insurance is issued will avoid the policy even though the misrepresentation is made through mistake and in good faith.

4. INDEMNITY, § 24*—*when plaintiff is entitled to recover.* In an action to recover upon an employer's fidelity bond, *held* that, under the agreed facts, plaintiff was entitled to recover.

5. INDEMNITY, § 6*—*what examination of employer's books is required.* The examination which it is stated, in an application by an employer for a fidelity bond, will be made of the employee's books is not intended to mean such an examination as will necessarily reveal the slightest irregularity, however cunningly it may be concealed.

6. INDEMNITY, § 6*—*what is effect of negligence of auditor in examining books.* Mere negligence on the part of an employer's auditor in the manner in which he examines the employee's books will not defeat recovery by the employer on a fidelity bond.

7. APPEAL AND ERROR, § 1414*—*when findings may be reviewed.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

Since the amendment of section 81 of the Practice Act in 1911 (J. & A. ¶ 8618), there is no merit in the contention that the sufficiency of the evidence to support the judgment cannot be inquired into on appeal from the judgment in a case tried without a jury, where the bill of exceptions or stenographic report does not disclose that plaintiff took an exception to entry of the judgment appealed from.

Appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed and judgment here for $889.13. Opinion filed April 30, 1920.

**Statement by the Court.** In an action, tried before the court without a jury, upon an employee's fidelity bond issued to plaintiff, the court found the issues against plaintiff and entered judgment against it for costs and this appeal followed.

The suit was commenced on July 16, 1918, in the Municipal Court of Chicago. In plaintiff's statement of claim it is alleged, in substance, that on July 31, 1917, the defendant executed and delivered to plaintiff a certain bond in the sum of $1,000; that the condition of the bond was that, in consideration of a premium of $10, the defendant agreed to reimburse plaintiff, within 3 months after satisfactory proof of loss, for any pecuniary loss sustained by plaintiff by any act of fraud and dishonesty, including larceny or embezzlement, forgery or misappropriation of funds, committed by Frank Francis Witt, in the position of bookkeeper and cashier, during the term commencing May 1, 1917 and ending May 1, 1918; that on April 8, 1918, the defendant issued a continuation certificate by which it agreed that said bond should continue in full force until May 1, 1919, and, together with said continuation certificate, should constitute a single and continued contract of suretyship; that said Witt did not faithfully perform and discharge all his duties as bookkeeper and cashier; that by false entries in the books and records of plaintiff and by other false and fraudulent means he procured plaintiff to issue and

pay out certain pay roll checks to persons who, as he then well knew, were not in plaintiff's employ, by which means large sums of money of plaintiff were paid out to him and others acting in collusion with him, all of which payments were improper, unauthorized and procured by his fraud, to the pecuniary loss of plaintiff in the sum of $908.44; that notice was promptly given to defendant upon plaintiff becoming aware of said Witt's dishonest acts, and within 90 days after the date of said notice plaintiff filed with defendant its verified and itemized claim; that plaintiff has not recovered any amount of said loss; that said bond is in full force and effect; and that defendant has refused to pay plaintiff any sum whatever on said bond. A copy of the bond, a copy of said continuation certificate and a copy of plaintiff's said verified and itemized claim were attached as exhibits to plaintiff's statement of claim. In said last-mentioned exhibit, dated in June, 1918, the following appears:

"The basis of this claim is a loss sustained by the undersigned on account of checks prepared by said Frank Francis Witt ostensibly for the payment of employees of the undersigned which were, in fact, made payable to persons who were not, at the date of said checks, employees of the undersigned and to whom nothing was due from the undersigned. Said checks were prepared by said Frank Francis Witt fraudulently and with the knowledge of the fact that the payments to be effected thereby were improper. The books of the company were falsified by said Frank Francis Witt to conceal such misappropriation of funds and said checks were cashed by said Frank Francis Witt or other persons acting in collusion with him and with the intent to defraud the undersigned.

"A list of said checks with the names of persons to whom payable, check number, date of check, and date of payments is as follows:

Checks payable to Joseph Bereski."

(Here follows a tabulation of the numbers of the

several checks, the respective dates and amounts thereof, and the respective dates when actually paid. The first check is dated September 22, 1917, and the last is dated April 27, 1918. All of the checks are shown to have been actually paid on dates prior to May 1, 1918, except the last check, amounting to $19.31, which appears as having been paid on May 3, 1918.)

"Checks payable to Frank Warga."

(Here follows a tabulation of the numbers of the several checks, the respective dates and amounts thereof, and the respective dates when actually paid. The first check is dated December 1, 1917, and the last is dated April 19, 1918. All of the checks are shown to have been actually paid on dates prior to May 1, 1918. The total amount of all checks in the two tabulations is $908.44.)

"Each of the payments made by means of checks above listed was improper and fraudulent, and was made directly by the procurement of said Frank Francis Witt, and resulted in a loss to the undersigned of the amounts thereof."

No denial was made of said defalcations or of the amount thereof, but, in defendant's affidavit of merits, as a defense, it was alleged that prior to the issuance of said bond, and as a part of the application for its issuance, plaintiff delivered to defendant a certain statement, dated July 25, 1917, designated as an "employer's statement," in part as follows:

|  |  | QUESTIONS. |  | ANSWERS. |
|---|---|---|---|---|
| 4. | (b) | How long has applicant been in your service? | (b) | 4 months. |
|  | (c) | In what position? | (c) | Bookkeeper and cashier. |
| 6. | (a) | Will applicant be authorized to sign checks on your behalf? | (a) | No. |
| 9. | (a) | At what intervals will applicant's books, accounts, stock and securities be inspected and audited and verified with funds on hand or in bank? | (a) | At least once in every 4 months. |

234 APPELLATE COURTS OF ILLINOIS.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

(b) At what intervals and in what manner will oustanding accounts, as shown by applicant's books or reports, be verified?

(b) At least once in every 4 months.

(d) By whom will above inspections and audits be made?

(d) J. B. Cook, Pub. Acc't.

10. (a) Has applicant always faithfully, honestly and punctually accounted to you for all moneys and property heretofore under his control or custody as your employee?

(a) Yes.

(b) Are applicant's accounts at this date in every respect correct, and proper securities, property and funds on hand to balance his accounts?

(b) Yes.

In consideration of the issuance of the above bond * * * the undersigned agrees that the above answers shall be warranties and conditions precedent to the issuance and continuance of the said bond.

AUTO TRUCK STEEL BODY CO.
H. R. Dailey,
Pres.

That the plaintiff did not comply with its agreements as set forth in answers to questions 6 and 9 in said statement and did not comply with the said contract "in other respects"; that plaintiff cannot recover because on March 26, 1918, there was issued by defendant to plaintiff a certain expiration notice, as follows:

"We hereby notify you that Bond No. 43250 for $1000, issued by this Company on behalf of Frank Francis Witt as bookkeeper and cashier, expires on the first day of May, 1918.

"We are pleased to advise you that the Company will continue its suretyship on receipt of the annual premium of $10, and the attached certificate, and to

that end request that you sign the certificate attached and forward with remittance.''

That upon the receipt of said notice, as a consideration for the continuance of said bond, plaintiff sent to defendant the premium referred to and the following letter:

''Chicago Bonding and Insurance Company,

Chicago.

''This is to certify that since the issuance of the above bond, Mr. Frank Witt has faithfully, honestly and punctually accounted to me for all money and property in his control or custody as my employe, has always had proper security and funds on hand to balance his accounts and is not now in default to me.

Auto Truck Steel Body Co.

''Dated March 27, 1918.            H. R. Dailey,

''Chicago, Illinois.                     President.''

That the said last communication from plaintiff to defendant was not true; that prior to the date thereof the said Witt had failed to account for the money and property in his control and was short of moneys; that the renewal of said bond was obtained by fraud and misrepresentation and that no recovery can be had thereon; and that, therefore, defendant is not indebted to plaintiff in any sum whatsoever.

At the beginning of the trial the attorney for plaintiff stated to the court in substance that the original bond was executed by defendant; that it covered the period from May 1, 1917 to May 1, 1918; that said Witt was employed by plaintiff as bookkeeper and cashier during said period; that Witt's defalcations were brought about by his falsifying plaintiff's books and records and fraudulently securing the issuance of certain pay roll checks; that the total amount received by him was $908.44; and that the only defenses to plaintiff's claim were those as set forth in defendant's affidavit of merits. Defendant's attorney did not contest any of said statements. Plaintiff's attorney further stated in substance that the only defalcations upon

236    APPELLATE COURTS OF ILLINOIS.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

which plaintiff's case is predicated occurred during the period of the original bond and not during the renewal period, and that consequently defendant's second defense as above set forth had no bearing upon the case. Thereupon defendant's attorney said: "We don't concede that; we say that on that statement you cannot recover on anything for any sum."

Plaintiff then introduced the original bond. Among the conditions precedent to any recovery, as stated in the bond, are the following:

"6th.   That the surety's liability hereunder shall cease immediately, as to subsequent acts of the employee from and after (a) the first day of May, 1918; (b) discovery by the employer or any of its officers of any default hereunder on the part of the employee; * * * (d) * * * claim of the employer against the surety must be duly presented to the surety *not later than twelve months after any such termination of the surety's liability.*"

It appeared, in substance, from the testimony of H. R. Dailey, president of the plaintiff, that on July 25, 1917 (the date said employer's statement was executed and delivered), Frank Witt had been in plaintiff's employ as cashier and bookkeeper for about 4 months; that Witt was not authorized to sign checks for plaintiff and never did sign checks during his employment; that during the year commencing May 1, 1917, and ending the latter part of April, 1918, when Witt was discharged, Witt's books and accounts were inspected, audited and verified with funds on hand or in bank by J. B. Cook, a public accountant; that said Cook made four separate audits of said books and accounts during the said period, the last one being made during the latter part of April, 1918, at which time the defalcations of said Witt were first discovered; and that on and prior to July 25, 1917, said Witt had always honestly and punctually accounted to plaintiff for all moneys and property in his custody or control, and on said date his accounts were correct and he had funds

and property on hand to balance his accounts. There was no testimony to the contrary. It thus appeared that plaintiff's representations contained in said employer's statement were true and correct. It further appeared from Dailey's testimony, in substance, that plaintiff during said year had over 75 men constantly in its employ; that one of Witt's duties as cashier was to prepare plaintiff's weekly pay roll, containing the names of the employees and the amount to be received by each; that this pay roll was prepared from time cards, issued by the superintendent to the several employees and subsequently placed in the possession of Witt; that after preparing the weekly pay roll list Witt wrote out checks for the amount due each employee, and then these checks, together with the pay roll list, were submitted to Dailey, as president, for his inspection; that then the checks were signed by Dailey and countersigned by the treasurer of plaintiff; that in September, 1917, Witt began inserting in each weekly pay roll list the name of a man who had left plaintiff's employ and who was not entitled to receive any payment; that in December, 1917, he began inserting another such name; that these names thereafter appeared in each weekly pay roll list until some time in April, 1918; that Dailey did not know the names of the various employees; that Dailey signed checks payable to the order of these two men, respectively, supposing they were employees and entitled to receive the amount of the checks; that all checks after being signed were returned to Witt, and as to the checks payable to the order of said two men it subsequently developed that Witt, or a confederate, indorsed and cashed them; and that while Dailey generally compared the pay roll list with the checks presented for his signature, he did not compare said list with the time cards prepared and issued by the superintendent.

It appeared from the testimony of plaintiff's other witness, J. B. Cook, that he had been a certified public

accountant since 1910; that he made four audits of plaintiff's books during the year from May 1, 1917 to May 1, 1918, and reported to plaintiff thereon; that the ends of the periods covered respectively by said audits were May 31, August 31 and December 31, 1917, and March 31, 1918; that he had about five employees assisting him in making said audits; that he worked on the audit for the period ending March 31, 1918, during the month of April, 1918, and that on April 27, 1918, he first discovered evidences of Witt's defalcations and immediately notified plaintiff; that in making said four audits he conformed with the usual method of doing the work as done by auditors generally; that in each of the audits he personally did some of the detail checking work, but that the major part of said checking was done by his assistants; that he, however, supervised all work done; that in the first three of said audits the pay roll lists were checked against the pay roll checks, but that he did not personally check the pay roll lists with said superintendent's pay roll cards; and that while working in April, 1918, on said last audit, he personally checked some of said lists with said cards and thereby Witt's defalcations were first discovered.

The only evidence introduced by defendant was the said letter or certificate of plaintiff, dated March 27, 1918, written in reply to defendant's letter of March 26, 1918, relative to the renewal of the bond for another year beginning May 1, 1918.

Campbell & Fischer, for appellant.

Sabath, Stafford & Sabath, for appellee; Charles B. Stafford, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

In *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee*, 233 Ill. 475, 481, it is decided (1) that a bond which is issued by a guaranty company

to indemnify an employer against loss from the dishonesty of an employee is "an insurance contract, and as such subject to the rules of construction applicable to insurance policies generally"; (see *People v. Rose,* 174 Ill. 310, 313); (2) that "contracts of guaranty insurance are made for the purpose of furnishing indemnity to the assured, and they should be liberally construed to accomplish the purpose for which they are made"; (see *Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co.,* 80 Fed. 766, 772 *et seq.*); (3) that "the law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the contract," and that "a material misrepresentation, whether made intentionally and knowingly or through mistake and in good faith, will avoid the policy"; (see also *T. Wilce v. Royal Indemnity Co.,* 289 Ill. 383, 389); and (4) that a statement in a renewal certificate of a bank cashier's guaranty bond that his books and accounts were examined by the bank "from time to time in the regular course of business" and found to be correct, does not mean that such a thorough and exhaustive examination was made as would necessarily discover the slightest irregularity that might exist, however cunningly covered up; and (p. 484) that "if bank officers are to be held to such a rigid method of examination and supervision over the accounts of their employees there would be but little necessity, if any, for purchasing fidelity insurance." In *Title Guaranty & Surety Co. v. Nichols,* 224 U. S. 346, where the action was on a fidelity bond given to protect a bank against the dishonesty of its cashier, it was decided in substance that the mere fact that the examination of the cashier's books and accounts, made by a competent person, had failed to discover discrepancies covered up by false entries, or other bookkeeping devices, did not necessarily prove that the examination had not been a reasonable one and made in good faith. In *Remington v. Fidelity*

240    APPELLATE COURTS OF ILLINOIS.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

*Deposit Co.,* 27 Wash. 429, a guaranty bond for the faithfulness of an employee, a bookkeeper and cashier, provided that the bond might be continued from year to year, so long as the company should consent, upon payment of the agreed annual premium. About the time of the expiration of the period of the bond, the employer, in order to continue it in force for another year, signed and delivered to the company a certificate that the books and accounts of said employee had been examined and found "correct in every respect and all moneys handled by him accounted for," and that "he has performed his duties in an acceptable and satisfactory manner and we know of no reason why his guaranty bond should not be continued." At the time this certificate was made the employer had no knowledge or suspicion that his employee was in default or dishonest in any way, but as a matter of fact at that time, as it subsequently developed, the employee had embezzled a considerable sum of money. After discovery of the defalcation the employer notified the company, and, upon its refusal to make any payment, brought suit. The bond insured the employer from "pecuniary loss * * * sustained by any act of fraud or dishonesty amounting to larceny or embezzlement * * * occurring during the continuance of this bond, and discovered during said continuance, or *within six months after * * * the expiration or cancellation of this bond."* On the trial the court instructed the jury to find for the company and entered judgment in its favor. In reversing the judgment and remanding the cause the court said (p. 441):

"The default was discovered within a month after the renewal was made. Certainly the respondent, under the *original* contract, was liable for any defalcation discovered within six months after the expiration of the contract, according to the terms thereof. A part of the defalcation complained of had accrued during the first year of the bond, and a part after the renewal thereof."

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

In the present case it appears from the undisputed facts that prior to the issuance of the original bond plaintiff, the employer of Witt, delivered to the company a written statement making therein certain representations as to then existing facts and as to certain acts to be performed by plaintiff during the period of the bond, which expired (unless continued by future agreement) on May 1, 1918; that these representations were agreed to be considered as warranties and conditions precedent to the issuance and continuance of the bond; that said representations as to the then existing facts were true and correct when made, and that the acts which were represented would be performed by plaintiff during the continuance of the bond were in fact performed in good faith as represented; that Witt began his defalcations in September, 1917, and accomplished them in the manner as above shown by the testimony of the president of plaintiff; that under the conditions existing in plaintiff's business, these defalcations were somewhat cunningly performed; that he continued in his dishonest work until about April 27, 1918 (about 4 days prior to the expiration of the original bond), when his defalcations were first discovered; that plaintiff immediately notified the company thereof and fully complied with the conditions of the bond as to notice and proof of loss; that plaintiff as the result of Witt's acts suffered a pecuniary loss of $908.44; that all of this loss was actually suffered before the expiration of the original bond on May 1, 1918, with the exception of $19.31, the proceeds of one of the checks in question which as appears was actually paid out of plaintiff's funds in bank on May 3, 1918; that on March 27, 1918, prior to the expiration of the original bond, plaintiff, desirous of continuing the bond in force for another year, delivered its certificate to the company in which it certified (as shown by the paper above set forth) to the honesty of Witt and that he was not then in default to plaintiff; that

242 APPELLATE COURTS OF ILLINOIS.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

this certificate was made in good faith by plaintiff but as a matter of fact it was at the time untrue; that the company, relying on said certificate and the representations therein contained, continued said bond in force for another year, beginning May 1, 1918; and that, under the provisions of the *original* bond, the company was not liable *thereunder* for any act of the employee after May 1, 1918, but that any claim thereunder might be presented within 12 months after May 1, 1918, or, in case of the discovery of the employee's default prior to May 1, 1918, within 12 months after such discovery.

We are of the opinion that, under the undisputed facts of the present case and under the law as disclosed from the decisions above referred to, the trial court erred in entering a finding and judgment in favor of the defendant company. We think that plaintiff was entitled to recover the full amount of its pecuniary loss, less the sum of $19.31, or the sum of $889.13. The loss of the sum of $19.31 occurred during the time that the *renewal* bond was in force. That bond was issued by the company in reliance upon plaintiff's certificate of March 27, 1918, above mentioned. The representations therein contained were in fact untrue, although at the time they were made plaintiff had no knowledge of Witt's defalcations, and believed said representations to be true and in good faith signed the certificate. But plaintiff as to said representations "assumed knowledge of the facts and cannot now allege want of knowledge." (*T. Wilce Co. v. Royal Indemnity Co.,* 289 Ill. 383, 389; *Hartford Life & Annuity Ins. Co. v. Gray,* 91 Ill. 159; *Whyland v. Chicago Bonding & Surety Co.,* 209 Ill. App. 485, 489.)

It is here strenuously urged by counsel for the defendant company that under the decision in the *Whyland* case, *supra,* this court should affirm the judgment entered by the trial court in the present case. We do not construe the decision in the *Whyland* case as counsel does, and the facts in that case are different from

the facts in the present case. In the *Whyland* case it appears in substance that the company insured the fidelity of plaintiff's cashier and bookkeeper, Sprange, for one year from November 5, 1913, by delivering a bond containing almost identically the same conditions as the bond now in question, except as to amount; that before the bond was issued, plaintiff, in an "employer's statement" made certain representations as to audits and examinations of Sprange's books and accounts which, it was stated, would be made "at least once in every —— months" during the period the proposed bond was to be in force; that it was agreed that said representations should be considered as warranties; that prior to the expiration of the original bond plaintiff, desiring a renewal thereof for another year, signed and delivered to the company a certificate, certifying to the honesty of Sprange and his not being then in default, in language almost identical to the certificate in the present case, and the bond was renewed for another year; that during the period of the original bond Sprange became a defaulter; that he commenced embezzling plaintiff's moneys in June, 1914, and continued doing so from time to time thereafter during the remaining period of the original bond and during a portion of the period of the renewal bond until his dishonest acts were discovered about March 1, 1915; that up to the time of the expiration of the period of the original bond his embezzlements had amounted to about $1,900, and his subsequent embezzlements brought the total sum up to about $3,050; that no audits or inspections whatsoever of his books and accounts had been made by plaintiff during the period of the original bond; that his embezzlements had been performed in such a clumsy and obvious manner that even a superficial examination, made at any time, of his books and accounts would have disclosed them; and that the jury returned a verdict in favor of the company upon which verdict a judgment was entered ac-

244        APPELLATE COURTS OF ILLINOIS.

Auto Truck Steel Body Co. v. Chicago B. & I. Co., 218 Ill. App. 230.

cordingly. This court affirmed the judgment on appeal, holding in substance that under the facts and circumstances disclosed plaintiff could not recover for any amount, either for the sums embezzled during the period of the original bond or during the period of the renewal bond; and further holding that it was not a case where an alert examiner, making an honest examination, might not have discovered the frauds, as was the case of *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475. The obvious distinction between the facts in the *Whyland* case and those in the present case is that in the *Whyland* case the representations, made prior to the issuance of the original bond, as to audits and examinations of the employee's books and accounts, had not been complied with in any particular, while in the present case they had been fully and in good faith carried out. Furthermore, even if in the present case it would seem, in the light of what subsequently developed, that plaintiff's auditor, J. B. Cook, was somewhat negligent in not having extended his examination so as, on each audit, to have compared the pay roll lists made out by Witt with the pay roll cards prepared by plaintiff's superintendent, still, we think, that such mere negligence, if any there was, should not militate against plaintiff's recovery for the loss sustained during the period of the original bond. (19 Cyc. 831; *Fidelity & Guaranty Co. of New York v. Western Bank* [Ky.], 94 S. W. Rep. 3; *Firemen's Ins. Co. v. Appleton Paper & Pulp Co.,* 59 Ill. App. 511, 512; *Holdom v. Ancient Order United Workmen,* 159 Ill. 619, 623.)

It is further contended that, inasmuch as the bill of exceptions or stenographic report does not disclose that plaintiff took an exception to entry of the judgment appealed from, the sufficiency of the evidence to support the judgment cannot here be inquired into. Previous to the amendment in 1911 of section 81 of the Practice Act (J. & A. ¶ 8618), where the case had been

. tried by the court without a jury as the present case was, this contention would have had merit. (*Climax Tag Co. v. American Tag Co.,* 234 Ill. 179; *Miller v. Anderson,* 269 Ill. 608, 612.) But since the passage of the amendment to said section of our statutes it has no merit. (*Miller v. Anderson, supra; City of Lewistown v. Harrison,* 282 Ill. 461, 466.)

For the reasons indicated the judgment of the municipal court is reversed and judgment will be entered here in favor of the appellant, Auto Truck Steel Body Company, and against the appellee, Chicago Bonding & Insurance Company, in the sum of $889.13.

*Reversed and judgment here for $889.13.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.