(No. 19595.—

L. H. SOHN *et al.* Defendants in Error, *vs.* THE NEW YORK
INDEMNITY COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1930.*

McKenna & Harris, (James J. McKenna, and Abraham W. Brussell, of counsel,) for plaintiff in error.

Morris K. Levinson, for defendants in error.

Mr. Commissioner Partlow reported this opinion:

Defendants in error, L. H. and C. M. Sohn, began suit in the circuit court of Cook county against plaintiff in error, the New York Indemnity Company, upon a fidelity insurance bond to recover $3847.99, lost by reason of the dishonesty of an employee of defendants in error, $1200 paid to an auditor for examining the books after the defalcation, and $500 attorney's fee. The last item apparently was abandoned. There was a trial by jury, a verdict and judgment in favor of defendants in error for $5000, the judgment was affirmed by the Appellate Court, and the case comes to this court upon a writ of *certiorari*.

Defendants in error were engaged in business in Chicago. On April 20, 1925, Arthur E. Dilly was employed by them as a book-keeper, stenographer and for general office work. Plaintiff in error issued to defendants in error a standard fidelity bond for $5000, in which it agreed to indemnify defendants in error against loss of money or other personal property through the fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction of Dilly. The bond was dated April 20, 1925. Dilly worked for defend-

ants in error about thirteen months. A few months after he was employed he began stealing money. He made out checks to his own order, as was the custom in the business, the checks were signed by one of the defendants in error and the stubs were properly filled out. Dilly then raised the checks but did not change the stubs. The checks were cashed. A part of the money was used for the payment of office expenses and pay-rolls and the balance was kept by Dilly. About May 31, 1926, Dilly's dishonesty was discovered, he was discharged, and plaintiff in error was immediately notified. The evidence of defendants in error shows that DeShields, the manager of plaintiff in error, told defendants in error that plaintiff in error would handle the matter and for defendants in error to secure an audit of the books. The audit showed a shortage of $3848.99. The auditor charged $1200 for his services, which it was conceded was reasonable. Plaintiff in error had several conferences with Dilly, who agreed to make restitution, and he and his wife paid $600 to plaintiff in error, which it still retains. On July 24, 1926, out of the presence of defendants in error and at the request and solicitation of plaintiff in error, Dilly made a written confession under oath, in which he admitted taking the money in the manner above stated. Shortly after making the confession Dilly left Chicago. He was later arrested, indicted, tried and acquitted.

Upon the trial the plaintiff in error offered in evidence the application, signed by one of the defendants in error, requesting plaintiff in error to issue a fidelity bond. It was dated May 4, 1925, two weeks after this bond was issued. It contained a number of questions and answers, the material parts of which are that Dilly had been recently employed by defendants in error; that his position was to be book-keeper, stenographer, and he was to do general office work; that he would handle cash for pay-rolls, and the largest sum he would be likely to hold at one time would be $600. These are some of the questions and the answers:

Question 10. "Have you so systematized your business that books, accounts or vouchers kept by other employees will serve as a check upon this employee in such position and enable you by an examination and comparison to detect and discover any act of fraud or dishonesty on the part of this employee?—A. Daily system.

Question 11. "(*a*) How often will a thorough examination of employee's books and accounts be made by an auditor or expert accountant, and cash, securities, etc., be counted, compared and verified with accounts and vouchers?—A. Semi-yearly.

"(*b*) When was such an examination of employee's books and accounts, cash and securities last made?—A. (1) Date, 3-21-25. (2) By whom made?—A. F. W. Manset.

"(*c*) Were they in every respect accurate?—A. Yes."

There were other questions and answers to which it will not be necessary to refer.

Plaintiff in error insists that the application and the bond must be construed as one instrument; that in the application defendants in error stated that there would be semi-annual audits by an auditor or expert accountant; that the evidence shows no such audits were made, therefore plaintiff in error would only be liable for defalcations during the first six months, or until October 20, 1925, which amounted to only $1429.15. This contention depends upon whether the application was a part of the bond. A copy of the bond was attached to the declaration. The bond makes no reference to the application. There was no recital in the bond that the application was a part of the bond. The application, which was dated two weeks after the date of the bond, contains the following: "The foregoing answers are warranted to be true, and the truth of each thereof is a condition precedent to the creation of any liability under the indemnity desired." Was this last clause a warranty or a mere representation? A warranty enters into and is a part of the contract and must be literally true in

order to entitle a party to recover. A representation is not a part of the contract but is an inducement thereto. A representation must relate to a material matter and is only required to be substantially true. (*Minnesota Mutual Life Ins. Co.* v. *Link,* 230 Ill. 273; *Continental Life Ins. Co.* v. *Rogers,* 119 id. 474.) A warranty is in the nature of a condition precedent. It must appear on the face of the policy, or if on another part of it or on a paper physically attached it must appear that the statements were intended to form a part of the policy, or if it is on another piece of paper they must be so referred to in the policy as to clearly indicate that the parties intended them to form a part of it. (*Wilce Co.* v. *Royal Indemnity Co.* 289 Ill. 383; *Treat* v. *Merchants' Life Ass'n,* 198 id. 431; *Mutual Benefit Life Ins. Co.* v. *Robertson,* 59 id. 123.) In *Spence* v. *Central Accident Ins. Co.* 236 Ill. 444, it was held that an application is not a part of the policy so as to render the statements therein warranties unless the language of the policy itself so clearly makes the application a part of the policy as to preclude any other reasonable construction; that the preliminary question whether an application is a part of the policy must be determined from the policy itself, in which that fact must affirmatively appear, and that if an application is not made a part of the policy, the statements therein, even though designated as warranties, are mere representations, the materiality and truth or falsity of which are questions of fact. The recitals in the application and in the policy in the *Spence case* are much more definite than are the recitals in the application now before us, but this court held that the recitals in that case were not sufficient to make the application a part of the policy. In its affidavit attached to its plea plaintiff in error admitted the execution of the instrument described in the declaration and the conditions set forth in paragraph 2 of count 1 thereof, as well as the other conditions of the policy contract. This affidavit recognizes the bond as set out in the declara-

tion and makes no mention of a written application which modified the bond or was a part of it. The bond makes no reference to the application. It does not state that the application is a part of the bond, therefore under these authorities the application was not a part of the bond and the statements made in the application were not warranties. The bond is dated two weeks before the date of the application. There is nothing in the evidence to explain this discrepancy. If these dates are correct, in the absence of any explanatory evidence the bond was not based upon the statements made in the application and the application could not be a part of the bond. If the application was not a part of the bond the liability did not terminate at the end of the first six months, which was on October 20, 1925, as contended by plaintiff in error, but the liability continued until the end of the term provided in the bond.

Plaintiff in error insists that it was not liable for the $1200 paid the auditor for examining the books. Section 7 of the bond provides that "in the event of a claim hereunder, the employer, whenever required by the surety to do so, shall give the surety all information and evidence possessed by the employer, and shall, at the request and cost of the surety, aid in securing information and evidence, and shall render all assistance (other than pecuniary assistance) that the employer can render for the purpose of bringing to justice, prosecuting and convicting criminally the employee and for the purpose of enabling the surety to procure reimbursement from the employee or his estate of any loss, damage or expense sustained by the surety hereunder." L. H. Sohn testified that as soon as he discovered the shortage he immediately notified DeShields, the manager of plaintiff in error, and asked what he should do. DeShields replied, "Engage an auditor to audit the books." This evidence was not controverted by plaintiff in error. A claim had arisen under the bond. It was the duty of defendants in error, at the request and cost of the surety, to

aid in securing evidence. Defendants in error were directed by the manager of plaintiff in error to have an audit made. The audit was made. It cost $1200, which is conceded to be a reasonable price, and under the terms of the bond plaintiff in error was liable for the payment thereof.

Plaintiff in error insists that the court improperly admitted in evidence the written confession of Dilly. The basis of this contention is, that at the time the confession was made there was no privity of interest or relationship between Dilly and plaintiff in error and the confession was not part of the *res gestæ*. The evidence shows that defendants in error had nothing to do with securing this confession, they were not present when it was secured, and they knew nothing of its existence until it was shown to them by DeShields. It was obtained by DeShields and other agents of the plaintiff in error and was used by them in an attempt to secure restitution from Dilly. L. H. Sohn testified that when he notified DeShields of the shortage De-Shields told him that plaintiff in error would assume charge of the case and for defendants in error not to take any action without consulting plaintiff in error; that a day or two after the confession was secured Sohn met DeShields, who showed Sohn the confession and told him he had secured the confession for the protection of defendants in error. DeShields said for defendants in error to be guided by DeShields' counsel—not to swear out a warrant for Dilly until further notice. This conversation between Sohn and DeShields was competent. (*Scovill Manf. Co. v. Cassidy*, 275 Ill. 462.) The confession was secured by the agents of plaintiff in error, it was presented to Sohn by the manager of plaintiff in error, and it was made the basis of a conversation between them in which the manager told Sohn what to do with reference to this shortage. It was corroborated by other competent evidence and was merely cumulative. Under the facts in evidence the confession was properly admitted.

It is insisted that the court improperly admitted certain conversations between L. H. Sohn and Dilly and a police officer by the name of Kean, who arrested Dilly. This evidence was also cumulative, and even if it was incompetent its admission was not sufficient to work a reversal of the judgment.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*