SHERRYL MARTIN, Plaintiff-Appellee, *v.* MARGARET McINTOSH *et al.*, Defendants-Appellants.

Fifth District　No. 75-433

Opinion filed April 15, 1976.

Earle McCaskill, of East St. Louis, for appellants.

George Parker, of Land of Lincoln Legal Assistance Foundation, of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendant appeals from a judgment entered in the circuit court of St. Clair County and raises issues which make it necessary to review in some detail the course of events in the trial court. The case was heard on a two-count complaint, the first alleging conversion and the second unlawful seizure of the property of the plaintiff. Both counts sought actual damages of $800 and punitive damages of $1,000. The defendant filed a two-count counterclaim for breach of an oral rental agreement and willful destruction of property and sought damages of $444. Following trial the jury returned a verdict in favor of the plaintiff under Count II of her complaint and awarded damages of $1,800. The jury also found in favor of the defendant and awarded damages of $71 under Count I of the counterclaim.

In December 1971, the plaintiff and defendant entered into an oral month-to-month lease agreement for an unfurnished apartment. During January the plaintiff, with the assistance of her father, shopped for furniture for the apartment. Ultimately, she purchased new furniture on an installment basis and paid a total of $547. She also purchased for cash miscellaneous household items including kitchenware and bed linen. In February 1972, plaintiff and a friend, Valentina Baker, upon delivery of the furniture, moved into the apartment and used it as their residence.

From February 1972 until late June 1972, plaintiff and Miss Baker lived in the apartment and used the furniture and other goods purchased by the plaintiff. These items were in good condition. In addition to the new items, plaintiff acquired a used rollaway bed, rugs, a space heater and clothing for herself and her expected child.

Plaintiff testified that the value of all these possessions, excluding the

new furniture, was $200. Her father testified that the original price she paid for the furniture was a fair price and that the market value of the furniture had depreciated approximately $100 by June 1972.

In late June, plaintiff left the apartment temporarily to stay with her parents until the birth of her child, expecting to return to the apartment after the child was born. She took with her only some clothing. Miss Baker continued to live at the apartment.

On or about August 10, 1972, Miss Baker returned after spending several days away from the apartment to find it cleared of all plaintiff's possessions. She saw no signs of a forcible entry; the defendant and her husband had a master key.

Miss Baker immediately notified plaintiff who then contacted the defendant and her husband, according to the testimony of plaintiff and Miss Baker. They also testified that the defendant admitted she had arranged for the removal and storage of plaintiff's property until plaintiff paid rent which she owed. Plaintiff testified that she offered, subsequently, to pay the rent demanded but the defendant told her the property had been sold. Defendant and her husband denied that they had removed plaintiff's property or that they had any conversations with her after July 1972.

Defendant did not send plaintiff or Miss Baker any written notice of a rent deficiency for July or August 1972, nor notice of intent to distrain property for failure to pay rent. No action for forcible entry and detainer for failure to pay rent was ever prosecuted by defendant.

Plaintiff never regained any of her possessions which had been removed from the apartment. She replaced, at a cost of more than $900, the living room, kitchen and bedroom furniture.

■■ Defendant, on appeal, raises three issues. First, she argues that the evidence adduced at trial was not sufficient to establish the value of the property at the time of the loss. Defendant asserts that the plaintiff's proof consisted only of a bill of sale for the furniture, which was insufficient, standing alone, to prove its value at the time of the loss 6 months later. There was, however, more evidence presented on this issue than defendant suggests. The evidence included not only the date, the purchase price, and a description of the furniture but also the condition of the furniture, not only at the time of purchase but at the time of the loss as well. In addition, plaintiff's father, a homeowner for 35 years, and experienced in shopping for household furniture, testified that the price plaintiff paid was a fair price and that the furniture had depreciated in value approximately $100 in 6 months of use. Such evidence was sufficient to be submitted to the jury for their findings as to actual damages. *Mayer v. Miller*, 213 Ill. App. 279.

Defendant also attacks the sufficiency of the evidence to prove the

value of the miscellaneous items of household furnishings purchased by the plaintiff as she did not establish their precise purchase price nor testify as to her knowledge of the prevailing prices of such items. We cannot agree. It has long been the law in this jurisdiction that where the property in question is of a usual and ordinary nature, such as household goods, their value is a matter of common knowledge and anyone, including a housewife, may testify as to its value. *Brenton v. Sloan's United Storage & Van Co.*, 315 Ill. App. 278, 42 N.E.2d 945; *Nurnberger v. Warren and Van Praag, Inc.*, 133 Ill. App. 2d 843, 272 N.E.2d 234.

■■ Defendant's second contention is that the jury verdict is excessive. Under Count II of her complaint the plaintiff asked for actual damages of $800 and punitive damages of $1,000. The court instructed the jury that should they find for the plaintiff and against the defendant on either or both counts of the plaintiff's complaint and further find that the plaintiff was entitled to punitive damages, then they should use the separate jury form provided for that purpose. This form for use in assessing punitive damages was returned blank. The jury returned a verdict form which indicated they found for plaintiff under Count II and set damages at $1,800.

The defendant asserts that the jury's failure to fill in the verdict form provided for assessing punitive damages is a blank finding tantamount to a finding for the defendant on that issue. She concludes therefore that the award of $1,800 is based on actual damages only and is clearly excessive.

The defendant's argument is not well taken. The authorities which defendant cites for this point, *Wilderman v. Sandusky*, 15 Ill. 59, and *Henderson v. Lisowski*, 46 Ill. App. 2d 81, 196 N.E.2d 518, apply the rule that a blank finding is tantamount to a finding of not guilty in verdicts involving multiple defendants and are not applicable to jury verdicts dealing with multiple count complaints.

Moreover, this argument ignores a long-standing rule of law which permits a trial court to construe a jury verdict which is defective in form and enter judgment thereon if it is possible to determine the jury's intent by reference to the entire proceedings, including the instructions, pleadings and evidence. "If the meaning of the jury can be ascertained and a verdict on the point in issue can be made out the court will mold it into form and make it serve." (*Western Springs Park Dist. v. Lawrence*, 343 Ill. 302, 311, 175 N.E. 579.) Authorities abound to support the bare assertion of this rule. However, those in which the factual situation involved was sufficiently akin to that of the instant case to make their reasoning applicable here include the following: *T. Wilce C. v. Royal Indemnity Co.*, 289 Ill. 383, 124 N.E. 635; *Bencie v. Williams*, 337 Ill. App. 414, 86 N.E.2d 258; *Hatfield v. Leverenz*, 35 Ill. App. 2d 222, 182 N.E.2d 385.

In *T. Wilce Co. v. Royal Indemnity Co.* the jury verdict read, "We, the jury, find for the plaintiff and assess the defendant's damages at" a certain amount. The trial court construed the verdict as one finding for the plaintiff and assessing damages for the plaintiff and, accordingly, entered judgment for the amount stated in the verdict. It was held on appeal that "the verdict contained the substance of a good return and the court had power to amend it" as it did. The court considered the defect in form to be an inadvertent error only; it was "apparent to reasonable minds [what] the jury meant." 289 Ill. 383, 391-92.

*Bencie v. Williams* involved a jury verdict for an injured plaintiff against a police officer and his bonding company. The jury returned three verdicts, one against the officer for $750, one against the bonding company for $5,000, and one against both defendants jointly for $5,750. The trial court construed these verdicts as meaning that the officer was liable for $5,000. The judgment was upheld on appeal, the court stating, "* * * if a little thought be given * * * it will become apparent that the construction of their [the jury's] intent reached by the trial court is correct." 337 Ill. App. 414, 421.

In the case of *Hatfield v. Leverenz* the jury signed the jury instruction rather than the jury verdict form provided. The instruction read:

" 'If you find the issues for the plaintiff and against the defendant, the form of your verdict may be:

'We, the jury, find the issues for the plaintiff and against the defendant, and we assess the plaintiff's damages at _____ Dollars. (You will fill in the blank with such sum of money as you may, from the preponderance of the evidence determine.)

'If you find the issues for the defendant and against the plaintiff, the form of your verdict may be:

'We, the jury, find the defendant not guilty.' " (35 Ill. App. 2d 222, 223.)

The jury had signed this sheet of paper directly beneath the last line of printing leaving the blank unfilled. The trial court construed this verdict as one for the defendant as the jury had not filled in the blank with an amount of damages for the plaintiff. On appeal this construction of the verdict was upheld as the most probable determination of the jury's intent.

Under the circumstances of this case it is possible to determine, as the trial court did, from a consideration of the entire proceedings that it was the intention of the jury to award $800 in actual damages and $1,000 in punitive damages. The issue instruction to the jury explicitly stated that the plaintiff was seeking a verdict of $800 in actual damages and $1,000 in punitive damages. Courts are permitted to look to the instructions to

clarify the jury's intent. (*Hatfield v. Leverenz; Western Springs Park Dist. v. Lawrence.*) Although the jury left blank the verdict form provided for awarding punitive damages, the verdict form which they did execute did not expressly limit relief to actual damages. It simply said "We assess the plaintiff's damages in the sum of $_____ under Count I and/or $1,800 under Count II." We find that here, as in *T. Wilce Co. v. Royal Indemnity Co.*, the defect is one of form only and that it is "apparent to reasonable minds [what] the jury meant." 289 Ill. 383, 392.

■■ There is present in the instant case another circumstance which indicates that the judgment of the trial court should be allowed to stand. After the jury returned its verdict, and before it was discharged, although it had dispersed, the plaintiff moved to resubmit to the jury the issue as to the apportionment of actual and punitive damages. This motion, which would have clarified the ambiguity of the verdict, was opposed by the defendant, and subsequently denied by the trial court. It was obvious that the jury had made a technical error in the form of the verdict at the time it was returned but the defendant chose to leave that defect uncured. Defendant should not now be allowed to attack the judgment on the grounds of that same defect. It has been the rule for many years that a party who has induced the trial court to make an error or acquiesced in its making or, as here, requested that it be made, cannot be heard to assign that same matter as error on appeal. *Posner v. Wechter*, 276 Ill. App. 138; *City of Waukegan v. Stanczak*, 6 Ill. 2d 594, 129 N.E.2d 751.

Just as in the waiver of the right to poll the jury, the refusal to use a " * * * time-honored safeguard * * * which would have clearly avoided all doubt as to the jury's collective determination" abrogates the right to " * * * complain that the apparent manifestation of the jury's decision is not technically perfect. The test of the validity of a general verdict is whether or not it expresses the intent of the jury so that the trial court can understand it and enter judgment thereon." *Gille v. Winnebago County Housing Authority*, 44 Ill. 2d 419, 424, 255 N.E.2d 904; *Buchholz v. Hartzell*, 130 Ill. App. 2d 927, 267 N.E.2d 35.

■■ The same reasoning provides an answer to defendant's third argument. She contends that verbal explanation of a jury instruction in open court by plaintiff's attorney in the presence of defendant's attorney was prejudicial *per se* and constituted reversible error. After the reading of the instructions by the court one juror requested an explanation of the instruction last given. The court gave a verbal explanation which was not objected to by either attorney. The court asked the attorneys "Did I explain that right?" Plaintiff's attorney responded "May I, Your Honor?" The court, after asking defendant's attorney if there was any objection and being told there was not, allowed plaintiff's attorney to proceed with

a verbal explanation. After this explanation was completed, defendant's attorney neither objected nor offered any further explanation of his own. Under these circumstances the defendant has waived her right to object to the explanation on appeal. *Pruitt v. Motor Cargo, Inc.*, 30 Ill. App. 2d 222, 173 N.E.2d 851.

■■ While we have affirmed the judgment in favor of plaintiff and corrected the verdict form to reflect the result plainly intended by the jury in accord with *Western Springs Park Dist. v. Lawrence*, one further point calls for attention. Plaintiff's complaint prayed for actual damages of $800 and that was the amount of damages awarded by the jury. However, the record does not contain any evidence that the amount of actual damage suffered by plaintiff was as much as $800. Plaintiff testified that the new furniture cost $547 and that the value of the additional items was $200, a total of $747. These valuations were verified by plaintiff's father who also testified that the new furniture had depreciated in value by $100. No witness placed a valuation of $800 on the subject items and accordingly the $800 amount is not supported by the evidence. "A verdict will be set aside by an appellate court as excessive where there is not evidence on which the amount allowed could properly have been awarded; where the verdict must of necessity have been for a smaller sum than that awarded; or where the testimony most favorable to the successful party will not sustain the inference of fact on which the damages are estimated." (5A C.J.S. *Appeal and Error* § 1651(b) (1958).) Accordingly, the judgment for $800 for actual damages must be reduced by the $153 alluded to. Rather than remand the cause to the trial court, pursuant to the power conferred by Supreme Court Rule 366(a)(5) (Ill. Rev. Stat., ch. 110A, par. 366(a)(5)), we deduct the $153 from the judgment entered by the trial court and amend the amount of the judgment to $1,647. See *Abbott v. Fluid Power Pump Co.*, 112 Ill. App. 2d 303, 251 N.E.2d 93.

Judgment amended and affirmed.

KARNS, P. J., and EBERSPACHER, J., concur.