Frank Sweat, Appellee, v. Aircraft and Diesel Equipment Corporation, Appellant.

Gen. No. 44,137.

Opinion filed June 21, 1948. Released for publication September 9, 1948.

VOGEL & BUNGE and B. S. QUIGLEY, both of Chicago, for appellant; L. H. VOGEL, LESTER MUNSON and FORREST S. BLUNK, all of Chicago, of counsel.

PERCIVAL THOMPSON, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

The defendant, Aircraft and Diesel Equipment Corporation, appeals from the judgment in a personal injury case entered upon the verdict of the jury in favor of the plaintiff, Frank Sweat, awarding him damages in the sum of $14,000.

Defendant's building, which it had occupied for more than five years prior to the accident, is a three-story brick factory located on the northeast corner of Ravenswood and Montrose avenues in Chicago. The accident occurred shortly after 5:00 p.m. on November 13, 1945. On the day preceding the accident a piece of cement coping fell from near the roof of the building onto the north sidewalk and parkway of Montrose avenue. Defendant's maintenance men then procured several large steel drums or barrels and loaded them with stones so as to hold them down. The first drum was placed at the southeast corner of the building,

and the second one part way between the first drum and a trolley pole embedded in a concrete footing adjacent to the curb about 20 feet from the Ravenswood avenue sidewalk. A rope was tied around the first barrel, stretched between it and the second barrel, looped around the second barrel, and from there around the trolley post. From the trolley pole it went straight east, being held in place by other barrels and other posts, to a point near the alley, and from there it was stretched in a northerly direction to the southeast corner of the building. This left an eighteen to twenty-four inch wide area between the barricade and the northerly curb of Montrose avenue for the use of pedestrian traffic. The concrete trolley pole footing was rough and uneven, and projected above the level of the surrounding parkway about one inch. A hard rain had fallen the preceding day, and on the night of the accident this concrete was covered with mud and was slippery. Plaintiff was walking over the area thus provided, close to the trolley post, when he tripped and fell into the street adjacent to an unusually high curb, and was severely injured. Inasmuch as no point is made as to the amount of the verdict it will not be necessary to discuss the nature and extent of his injuries. It is undisputed, not only by the pleadings but by defendant's witnesses as well, that the path left open to the public was selected by defendant, and that it was over this area that defendant invited the public to walk. Its action excluded the public from all the safe areas of the sidewalk and parkway and limited it to that portion which proved to be dangerous.

One of the defenses interposed was that the closing off of the sidewalk and a portion of the parkway adjacent to defendant's building was an emergency measure necessitated when a portion of the coping was blown from the top of its building by a high wind, and that it was therefore not guilty of negligence in

roping off the sidewalk and a portion of the parkway to avoid injury to pedestrians from falling debris. The United States Weather Bureau report showed heavy rain on November 12. The only witness who ascribed any reason for the fall of the coping was defendant's personnel manager, Louis Simmons. He was of the opinion that rain water had seeped in behind the coping, had frozen, and thus caused the coping to become loose, so that it fell, and he stated that the wind and rain on the day in question were not sufficient to make the coping fall. Simmons also testified that the building had not been inspected by their maintenance men for about a year prior to the occurrence, and thus the only plausible explanation for the fall of the coping was a gradual deterioration over a long period of time due to the normal action of the elements to which buildings in this area are exposed.

Although defendant states in its "theory of the case" that plaintiff was guilty of contributory negligence, the point is not argued, and we must therefore assume that it has been abandoned. With respect to the charge that defendant's negligence proximately caused plaintiff's injuries, defendant advances two contentions. It is first urged that it was not guilty of negligence in obstructing the sidewalk and parkway because it was confronted with a sudden emergency. Although this may be true, no one but defendant was responsible for the emergency created by the falling of a piece of coping from its building. Defendant had a regular maintenance department; nevertheless, the building had not been inspected for about a year prior to the accident, and the barricade was erected because one of the employees was "afraid another chunk would fall down," without making any inspection to see if there was any likelihood of such a mishap occurring. The second contention made is that even though defendant provided an unsafe pathway for pedestrians, that pathway was maintained and owned by the

city, and therefore defendant was not responsible if it elected to place the path for pedestrians on premises owned and maintained by the city. As heretofore pointed out, the path provided for pedestrians was selected by defendant, and it was over this particular area that defendant invited the public to walk, thereby excluding the public from all the safe areas of the sidewalk and parkway and limiting traffic to that portion which was dangerous by reason of the rough, slippery and uneven concrete footing which was difficult to see in the dark.

It is also urged that the giving of two erroneous instructions offered by plaintiff confused the jury and produced the unfavorable verdict. One of the instructions set forth *verbatim* part of an ordinance of the City of Chicago as follows: "No part of any sidewalk or sidewalk space shall be taken for private use . . . by shutting off the public from using the same; . . . ." Defendant's counsel say that this instruction was erroneous for two reasons: (1) the ordinance has no application to the facts in this case since it relates merely to the taking of a sidewalk or sidewalk space for private use, and the record presents no evidence of any such taking; and (2) even assuming that the ordinance had some application to the issues, it would still be erroneous for the reason that it lacks the necessary qualification that under certain circumstances a reasonable obstruction of a public highway may be permissible. The second instruction complained of is one in which a certain statute of the State of Illinois is set forth *verbatim* as follows: "It shall be unlawful for any person to wilfully or negligently obstruct, injure or destroy, or render impassable or dangerous for pedestrians or persons riding bicycles, any sidewalk or walk as described in Section 1 of this act." Here again it is urged that the obstruction of the sidewalk was required for the necessary protection of pedestrians; that it was not a negligent

or wilful obstruction by the defendant; and that the failure to qualify the statute in this respect constituted error. The general rule regarding instructions in the language of an ordinance or statute is stated in *Deming v. City of Chicago,* 321 Ill. 341, as follows: ''Where an instruction is given in the language of a statute which is pertinent to the issues it must be regarded as sufficient. Laying down the law in the words of the law itself ought not to be pronounced error. (*Greene v. Fish Furniture Co.* 272 Ill. 148; *Mertens v. Southern Coal Co.* 235 id. 540; *Mt. Olive Coal Co. v. Rademacher,* 190 id. 538.)'' In the *Deming* case an instruction was given substantially in the language of the Wrongful Death statute. The general rule there enunciated was followed in the case of *Goldberg v. Capitol Freight Lines,* 382 Ill. 283, and also in *Moran v. Gatz,* 327 Ill. App. 480, where such an instruction, although not approved, was not held to be error if it had no tendency to mislead. Although the instuctions in this case may have been subject to the criticism made by defendant, they were rendered innocuous by defendant's instruction No. 1 which advised the jury that ''the violation of a statute or ordinance, if the jury finds any violation to have existed at the time and place in question, cannot be the basis of a finding of guilty against the defendant unless the jury further find from all the evidence and under the instructions in this case that such violation, if any, was a proximate cause which materially contributed to the accident in question.'' With this qualification, the further qualifications for which defendant contends are unnecessary.

By the additional or supplemental answer filed by defendant shortly before trial, defendant affirmatively interposed the defense that plaintiff was barred from maintaining his common-law action by reason of section 29 of the Workmen's Compensation Act of the State of Illinois (Ill. Rev. Stat. 1947, ch. 48, par. 166 [Jones Ill. Stats. Ann. 143.44]). The supplemental

answer alleged that defendant, the plaintiff and his employer were operating under and were bound by the provisions of that statute, and that plaintiff's injury arose out of and occurred in the course of his employment. Plaintiff admitted that the interested parties were all operating under and bound by the provisions of the act, but denied that his injuries arose out of and occurred within the scope of his employment, and he averred that the accident which caused his injuries was the result of a condition or hazard created by defendant and one which was not peculiar to the plaintiff's employment but to which the public generally was subjected. Both of the parties concede that there is no conflict in the evidence as to any fact relating to the plaintiff's employment as applicable to the provisions of the Illinois Workmen's Compensation Act. Under sections 6 and 29 of that statute the common-law right of action of an injured employee who suffers such injury in the course and scope of his employment is extinguished as to him and transferred to his employer to the extent of the compensation paid or for which the employer becomes liable if the alleged negligent third party is also operating under and bound by the provisions of the act. To make this provision operative, however, it is essential either that the injured party should be engaged in the course of his employment at the time, or that the accident should arise out of his employment.

From the undisputed facts it appears that plaintiff had been employed by the Lloyd-Thomas Company for twenty-seven months prior to the accident as an architectural appraiser. He was employed in the office of the company from 8:15 a.m. to 5:00 p.m., with an intermission of forty-five minutes at noon. On the day of the accident his work and hours of employment were as above set forth, and his duties and hours were to continue as such until the afternoon of the day following the accident, when for the first time he was

to start doing "field work" in Kalamazoo, Michigan. For this new assignment he was to receive a different rate of pay, was to travel, and to receive an expense account. On the evening before the new duties were to begin he left the company's office at the end of his day's work, shortly after 5:00 p.m., intending to go to the La Salle station to purchase a parlor-car reservation to Kalamazoo. No one at the company had instructed him to go downtown after hours that evening to make the reservation, and he intended to use his own money to purchase it and to turn in an expense account later on. When an employee of the company started on a job that required him to travel, the cashier advanced the money for transportation expenses which would later be accounted for in a report to the company. In this instance plaintiff had not received the customary advance for traveling expenses. In order to reach the La Salle station plaintiff intended to take an east-bound Montrose avenue car. The Lloyd-Thomas Company is located at 4411 North Ravenswood avenue, and adjoins the defendant's building which is located on the northeast corner of Montrose and Ravenswood avenues. East-bound Montrose avenue cars do not stop at Ravenswood avenue. Plaintiff therefore walked east on the north side of Montrose avenue toward Hermitage avenue, where these cars stopped. He was between Ravenswood and Hermitage avenues, about twenty feet east of the sidewalk of east Ravenswood avenue, when the accident occurred. Ordinarily in going home he pursued the same course, and on the night preceding the accident, when the barricade had already been erected, plaintiff walked over this same route.

Under the established rule in this State defendant had the burden of proving the affirmative defense which it interposed. The recent case of *Mueller v. Elm Park Hotel Co.*, 391 Ill. 391, presented a similar situation. The question there arose as to whether or not plaintiff was bound by the provisions of the Work-

men's Compensation Act. That issue was first brought into the case by special defense set up in the answer to the complaint, as was done in the case at bar. The special defense alleged, as here, that the injuries arose out of and in the course of plaintiff's employment. As to these circumstances the court said that ''In order for appellee [defendant] to sustain its special defense, the burden was on it to show not only that it was under the act, but that appellant [plaintiff] and her employer were likewise under the act, and that the injuries sustained by appellant arose out of and in the course of her employment. This it wholly failed to do.''

At the close of all the evidence in the case at bar plaintiff moved that the defendant's special defense be stricken. Defendant had also moved the court for a directed verdict in its favor. It is thus apparent that both parties treated the question whether the Workmen's Compensation statute was applicable as a question of law; and since the burden of proving the special defense rested on defendant it became the duty of the trial judge at the close of all the evidence and on motion made by plaintiff to determine whether or not defendant had sustained its burden of proving that the injuries arose out of and in the course of plaintiff's employment. In doing so it was not necessary for the court to consider or weigh any conflicting evidence, since both sides conceded that the evidence with respect to this phase of the case was not in dispute.

It thus became a question of law as to whether plaintiff was in the course of his employment at the time of the accident. The respective counsel cite numerous Illinois decisions on the subject. Under the general rule in this State an employee is not in the course of his employment unless within the period thereof he is reasonably performing the duties for which he was hired or is engaged in doing something incidental thereto at a place where his employment makes it reasonably necessary to be done. A risk is

not incidental to the employment unless it is connected with what the employee has to do in the fulfillment of his contract of service; and where a servant voluntarily and without direction from his master, and without his knowledge or acquiescence, departs from the duties for which he is hired, and undertakes to do an entirely different kind of work, he is a mere volunteer and does not come within the protection of the Workmen's Compensation Act. These general rules are enunciated in *Eugene Dietzen Co. v. Industrial Board,* 279 Ill. 11. In *International Harvester Co. v. Industrial Board,* 282 Ill. 489, an employee whose work involved traveling, was making a trip without any specific direction from his employer, and in denying compensation the court summarized the salient facts, which are somewhat similar to those in the case at bar.

Nor would the facts in this case support the conclusion that the accident arose out of plaintiff's employment. In the recent case of *Lyons v. Michigan Boulevard Building Co.,* 331 Ill. App. 482, Mr. Justice SCANLAN, speaking for the court, cited numerous cases touching upon this question, and quoted at length from the pertinent portions of *Chicago Hardware Foundry Co. v. Industrial Commission,* 393 Ill. 294, wherein the Illinois Supreme court stated that "We said in the *Country Club* case [*Illinois Country Club, Inc. v. Industrial Commission,* 387 Ill. 484]: ' . . . if an injury is caused by reason of some factor unrelated to the nature of the employment, it cannot be said to arise out of the employment, and an injury which cannot fairly be traced to the employment as a contributing, proximate cause and which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise out of the employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public.' " See also *Borgeson v. Industrial Commission,* 368 Ill. 188, and *General Steel Castings Corp. v. Industrial Commission,* 388 Ill. 66. Under

these rules it is apparent that the accident in the case at bar did not arise out of plaintiff's employment. There was nothing in the nature of his work that exposed him to the risk of injury to any greater or different extent from that to which the general public was exposed. The risk of injury at the time of the accident was exactly the same as that to which all other pedestrians were exposed who used the north side of Montrose avenue. The evidence discloses that many people were using the pathway prior to and after plaintiff was injured, and all of them, however diversely employed, were subject to the same hazard as plaintiff.

From an examination of the many decisions on the subject in this State it seems to be well settled that there must be a connection between the employment and the injury which is apparent to the rational mind. With respect to street injuries, one of the factors is the type of work the employee does; another, whether he is continuously on the street or only at infrequent intervals; and still another, whether his employer has control over his movements and directs them; but in all instances the party asserting the claim of Workmen's Compensation has the burden of making it apparent that the risk which caused the injury was peculiar to the particular employment and not a normal hazard to which all persons were equally exposed. Since the facts were not in dispute, this was a question of law for the court to determine, and under the decisions cited, which reflect the prevailing rule in this State, we think the court properly held by its rulings that plaintiff did not come within the provisions of the Workmen's Compensation Act.

The case was well tried, and finding no convincing reason for reversal, we think the judgment of the superior court should be affirmed, and it is so ordered.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.