(No. 40225.—

LOUISE McELLIGOTT, Individually and as Administrator of the Estate of FRANCIS W. McELLIGOTT, Appellee, *vs.* ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed June 22, 1967.*

460

BURROUGHS, SIMPSON & BURROUGHS, of Edwardsville, (ROBERT MITTEN, ROBERT S. KIRBY, and PAUL M. KING, of counsel,) for appellant.

KASSLY, WEIHL, CARR & BONE, of East St. Louis, for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Louise McElligott, individually and as administrator of her deceased husband's estate, sued the Illinois Central Railroad Company in the circuit court of Madison County for damages arising out of a collision between plaintiff's automobile and one of defendant's trains at a railroad crossing in Belleville, Illinois.

The evidence disclosed the following: On March 4, 1960, about 9:15 P.M., the plaintiff, Louise McElligott, drove a 1959 Ford automobile, with her husband as passenger, north on 19th Street and collided with defendant's west-bound train. She suffered personal injuries and her husband died as a result of the collision.

The accident occurred in Belleville at a point where South 19th Street and defendant's track intersect at right angles. This crossing is in a residential area and concededly over a well-traveled street. Defendant acquired this right-of-way in 1853, which was 100 feet wide and measured 50 feet each way from the center of the rails. It consisted of a single track over which defendant operated its trains. Plats and exhibits admitted in evidence showed that there was no street south of the track in 1867 and in 1870. In fact, there was no evidence as to when the street was constructed but evidence did disclose that prior to it being paved it was a dirt road. In 1926, the city of Belleville, through a special assessment, had 19th Street paved to within four feet of the rails and paved the curbs and sidewalks to within two feet thereof. The defendant asphalted the four feet on each side of the rails. The city thereafter maintained the street, sidewalks, and curbs.

The evidence most favorable to the plaintiff indicated that Louise McElligott, driving north on 19th Street at about 15 miles per hour, observed a train headlight shining over a garage to her right, when she was about 30 feet from the crossing. There had been snow and ice on the ground for at least a week prior to the incident and, although the city had cindered the main thoroughfares, South 19th, including

the crossing and its approaches, had not been cindered or salted and was covered with snow and ice and was slippery. As the train traveled, it was going slightly up grade at about 45 to 50 miles per hour and the automobile was proceeding on a slight down grade. Upon seeing the headlight, plaintiff applied and pumped the brakes, the car commenced sliding on the icy down grade and, although she turned the front wheels to the left, it continued to slide and collided with the train at approximately the center of the street about 10 feet from the front of the engine.

During the course of the trial the plaintiff introduced into evidence, over defendant's objection, Illinois Commerce Commission Rule 206, which provided that: "At every grade crossing where the duty of constructing or maintaining either the crossing proper or its approaches (or any part thereof) is by statute, by order of the Commission, or in any lawful manner, placed upon a railroad company, it shall be the duty of the railroad company to construct and maintain the crossing or approaches so that at all times they will be safe as to persons and property."

The trial court allowed plaintiff's Instructions No. 10 and 11 to be given to the jury. Instruction No. 10 was as follows:

"At the time of the occurrence in question there was in force in the State of Illinois a statute [Section 8 of An Act in relation to fencing and operation of railroads, also known as the Railroad Act, (Ill. Rev. Stat. 1961, chap. 114, par. 62)] which provided that:

'Hereafter, at all of the railroad crossings of highways and streets in this state, the several railroad corporations in this state shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way so that at all times they shall be safe as to persons and property.'

If you decide that the defendant violated the statute on the occasion in question, then you may consider that fact

together with all the other facts and circumstances and evidence in determining whether or not the defendant was negligent before and at the time of the occurrence."

That part of Instruction No. 11 necessary for our consideration, was in words as follows:

"The plaintiff claims that she was injured and sustained damage and that decedent was killed while she and decedent were exercising ordinary care, and that the defendant was negligent in one or more of the following respects:

"(a) In failing to sound the horn or bell on the engine when one-fourth of a mile from the crossing and in failing to keep sounding the horn or bell until the crossing was reached, contrary to a certain Statute of the State of Illinois.

"(b) In operating its train at an excessive rate of speed in view of the conditions then prevailing.

"(c) In failing to give adequate and timely warning of the approach of its train to the crossing in view of the conditions then prevailing.

"(d) In failing to provide automatic flasher lights or warning lights or gates or flagmen at the crossing when the defendant knew, or should have known, that a large number of motorists frequently travel the crossing, that the view of the tracks to the east was obstructed, and that the street approach to the crossing from the south was on a down grade.

"(e) In failing to maintain its crossing and its approaches thereto within its right of way so as to be safe as to persons crossing same."

A jury verdict for the plaintiff awarding damages for personal injuries and for the wrongful death of her husband was set aside by the circuit court and a new trial ordered.

In a lengthy opinion supporting its order for the new trial, the circuit court stated that:

"While there was conflicting evidence on the sounding of a horn or whistle by the defendant, and the speed of its

train; and, also evidence that the only protection at the crossing was the usual cross-buck signs, the principal contention of plaintiffs [sic] was that the railroad was under a duty to maintain the street within its entire right-of-way so as to be safe for plaintiffs' travel; and that by defendant's failure to cinder, or salt, the area of its right-of-way in the street, this made the right-of-way unsafe and was the proximate cause of plaintiff, Louise McElligott's injuries and Francis McElligott's death * * *.

"Plaintiffs' opening statements and arguments were principally focused on this point. Their instructions 10 and 11 and their Exhibit 39 (Rule 206 of the Commission) all stated without equivocation, this fact."

The trial court found that the word "safe" as it appears in the statute has been construed by the courts to mean "reasonably safe" and therefore felt that the effect of the use of the word alone in the instructions and in the rule was to make the defendant an insurer "and this placed a greater duty on the defendant than the law requires." Furthermore, the court said: "the extent of the approaches, as defined in said cases, [*Illinois Central Railroad Co.* v. *City of Bloomington*, 76 Ill. 447; *People ex rel. City of Chicago* v. *Illinois Central Railroad Co.*, 235 Ill. 374; *City of Chicago* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.*, 247 Ill. 319; *County of Cass* v. *Chicago, Peoria & St. Louis Railway Co.*, 130 Ill. App. 346; *City of Bloomington* v. *Illinois Central Railroad Co.*, 154 Ill. 539; *Illinois Central Railroad Co.* v. *Truesdell*, 68 Ill. App. 324] and in interpreting the statute, is determined by what is reasonably required to accommodate public travel, and that is fixed by the *actual crossings and approaches* which are made by the railroad companies with the acquiescence of the public and the public utilities."

The court did suggest and give defendant's instruction numbered 15 which provided that:

"* * * the crossing and the approaches thereto, which

the defendant is required to construct and maintain may but does not necessarily coincide with the limits of the defendant's acquired easement of rights of way.

"In determining the width and extent of the crossing and the approaches thereto you may take into consideration the demands of the traveling public, the action of the City of Belleville and upon what would be reasonable under the circumstances and local situation in this case and in considering such factors you may consider:

"The original construction of the street.

"The control and maintenance of the street.

"The distance from the rails at right angles out into the street over which the defendant has asserted control by way of maintenance, repairs or surfacing."

But the court felt this instruction in no way referred to the statute or rule relied upon by the plaintiff, nor did it contain any limitation applicable to the statute specifically or "the interpretation placed therein by the decisions of the court." The court therefore stated that the rule should not have been admitted because it did nothing more than reiterate the statute and what had been given in the two instructions. The court further stated that by its admission, the jury was told not only was a duty imposed on the defendant by statute, but also by a rule of the Illinois Commerce Commission and that this had the effect of informing the jury, without limitation, that it was the duty of the defendant to keep 50 feet of its right of way either cleared of snow and ice, or to cinder it, so as to be "safe", thereby placing a greater duty on the defendant than the law requires, and in effect making it an insurer of the plaintiff's safety.

On appeal, the Fifth District Appellate Court agreed that the word "safe" as used in the instruction had been judicially construed to mean "reasonably safe" (citing authorities) and that this modification was not reflected in the instructions. But that court held that the error in the

present case, if any, would have occurred if the jury had been misled by the use of the word "safe". The court considered the total effect of all the instructions and held that the use of the word "safe" without a reference to the judicial modification was not reversible error, since the jury, ordinary men and women, would not understand the instructions to impose the liability of an insurer on defendant. The appellate court further found that the submission of Instructions 10 and 11 in conjunction with the admission of Rule 206 did not have the effect of directing a verdict against the defendant notwithstanding the trial court's opinion that the jury was told thereby, by the unmodified use of the term "approaches", that defendant had the duty to maintain the area within the entire right of way. The appellate court observed that the term "approaches" as used in section 8 had been judicially modified, and that in view of these modifications, the extent of the area within its right of way which under section 8 defendant is required to make "reasonably safe" is essentially a factual question for the jury to determine. The court further reasoned that while these modifications were not reflected in Instructions 10 and 11, the meaning of the term "approaches" was adequately clarified in defendant's Instruction 15 and that therefore "the jury could have found, from a consideration of all the evidence that the defendant had a duty to maintain the entire area within its right of way."

The appellate court then noted that the defendant "could fulfill its duty to maintain its crossings and the approaches thereto in a reasonably safe condition in a number of ways", including "* * * the cindering or salting of the area, or the removal of ice or snow * * *," and concluded "In other words, it was for the jury to determine both the extent of the area which the defendant had the duty to maintain and the type of conduct which would constitute reasonable care under the circumstances." Since the court had held that the jury had been properly instructed on these

issues, it reversed the circuit court's order for new trial and remanded the cause to that court with directions to enter judgment on the jury's verdict. 74 Ill. App. 2d 121.

The defendant petitioned this court for leave to appeal from the appellate court's decision, contending, *inter alia,* that the effect of that decision is to charge it with the duty of maintaining the public street over its right of way, including the removal of natural accumulations of ice and snow, and that such duty is unlawful, unreasonable and impractical. The defendant also contends that the instruction on section 8 of the Railroad Act was erroneous since that section has been repealed by the Public Utilities Act (Ill. Rev. Stat. 1965, chap. 111⅔, par. 62), and that the appellate court committed error in overruling the trial court's order for new trial. We granted leave to appeal.

With respect to defendant's contention, concerning the viability of section 8 of the Railroad Act in light of the enactment of Section 58 of the Public Utilities Act, (Ill. Rev. Stat. 1965, chap. 111⅔, par. 62.) we note that in *Illinois Central Railroad Co. v. Franklin County,* 387 Ill. 301, 311, cited by defendant in support of its position, we stated that "The provisions of the Railroad Act are still effective insofar as such provisions are not in conflict with, or repugnant to, the provisions of the later Public Utilities Act covering the same subject matter." There is no inconsistency or repugnancy in the fact that the Railroad Act requires a railroad to make its crossings "reasonably safe" and the Public Utilities Act empowers the Commerce Commission to "determine and prescribe the manner　*　*　* and the terms of installation, operation, maintenance, use and protection of each such grade crossing." (Ill. Rev. Stat. 1961, chap. 111⅔, par. 62.) The former provision is aimed at regulation of the railroads directly whereas the latter is an enabling provision giving an administrative agency the power to regulate. We find the two statutory provisions operate conjunctively, not conflictingly, to protect the gen-

eral public's safety and that the above referred to portion of section 8 was in effect at the time plaintiff's instructions were submitted.

Turning to a consideration of the propriety of Instructions 10 and 11, we find that these instructions were erroneous since where there has been judicial modification of a statute upon which instructions are based, those instructions should be worded so as to reflect this judicial construction and charge the jury with the proper legal meaning of the statute. While it is not necessary to grant a new trial in every instance where such an omission occurs, herein the trial judge, who is in the best position to gauge the effect of erroneously given instructions or erroneously admitted evidence, was of the opinion that Instructions 10 and 11 created a misapprehension in the minds of the jurors of the duty owed by defendant under the law and that they based their verdict thereon. This misapprehension of the duty owed, he said, was caused not only by the failure to include the judicial modification of the word "safe" contained in section 8, but by the failure to adequately instruct the jury on the meaning of the term "approaches", that is, the extent of area of the railroad's right of way which it had to make "reasonably safe".

The appellate court regarded the giving of defendant's Instruction No. 15 as curing any error with respect to the jury's understanding of what constituted an "approach", and held that in consideration of all the evidence the jury could have found "that the defendant had a duty to maintain the entire area within its right of way". We cannot agree. First, as the trial judge pointed out, that latter instruction contained no specific reference to either the statute or the rule wherein the term "approaches" appears, thus undercutting its possible curative value. But secondly, and more importantly, in our judgment, under the facts of this case, the jury could not have found that the defendant was under a duty to maintain (make reasonably safe) any area

of its right of way in excess of the four-foot extension from the outer rails of the track. The evidence was simple and uncontroverted. The railroad did not construct or maintain any portion of its right of way other than the area referred to above which represents the distance from the rails at right angles out into the street over which defendant has asserted control by way of maintenance, repairs or surfacing. The city of Belleville did construct, maintain, and control South 19th Street, including that part which passes over defendant's right of way. Hence, from a consideration of all the facts and circumstances in evidence, we hold, as a matter of law, that the approaches herein were limited to extensions of four feet on either side of the rails.

We believe the trial court was in the best position to appraise the cumulative effect of the submission of Instructions 10 and 11 without the inclusion of the judicial modifications and the admission of Rule 206 into evidence. Contrary to the appellate court's opinion, we concur with the trial court's statement that if the only negligence charged was the failure to maintain the area within the entire right of way, "this court would have granted a directed verdict." It is clear that the trial court premised this statement on the fact that the railroad, like the municipality, had no duty to remove or otherwise neutralize the effect of natural accumulations of ice and snow from that part of its right of way not encompassed by its approaches, (*Strappelli* v. *City of Chicago,* 371 Ill. 72,) that the railroad's approaches herein consisted of only a four-foot extension from the rail, and that the proximate cause of the accident was the slipping and skidding of plaintiff's car on that part of defendant's right of way not encompassed by its approaches. Since we hereby hold that the railroad has no greater duty than a municipality to remove or otherwise offset the effect of natural accumulations of snow and ice from that part of its right of way not encompassed by its crossings and approaches, and since we have previously held that the ap

470

proaches herein were limited to four-foot extensions on either side of the center of the rail, we do not find, as the appellate court held, that the trial court predicated its order for a new trial on an erroneous statement of law.

Since we hold that the trial judge did not base his opinion on any erroneous interpretation of law, it is our judgment that the order granting a new trial should be reinstated.

Accordingly, for the reasons stated, the judgment of the appellate court is reversed, the order of the trial court for a new trial is reinstated and the cause remanded to the circuit court of Madison County, Granite City Division, for a new trial in a manner not inconsistent with this opinion.

*Reversed and remanded.*