ALICE PERRY, Plaintiff-Appellant, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellee.

First District (1st Division)   No. 76-254

Opinion filed October 11, 1977.—Rehearing denied November 18, 1977.

84

Thomas M. Knepper, of Moses, Gibbons, Abramson & Fox, and John D. Hayes and Associates, Ltd., both of Chicago, for appellant.

James P. Daley and Ronald J. Cuchna, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an action brought by a pedestrian, Alice Perry, seeking recovery for personal injuries sustained when she was struck by an automobile. Plaintiff sued both the driver of the automobile, William McKinney, and the Chicago and North Western Transportation Company (hereinafter referred to as Chicago and North Western) for its alleged negligence arising from the construction and maintenance of a passenger terminal building at the scene of the occurrence. The case went to trial and, as the jury was concluding its deliberations, plaintiff settled with the defendant McKinney. The jury rendered a verdict for both defendants, and in answer to a special interrogatory, found that the plaintiff was free from contributory negligence. The trial court entered judgment on this verdict, and after her post-trial motion was ordered denied, plaintiff appealed.

On appeal plaintiff makes the following contentions: (1) that the trial court erred in ruling that certain ordinances could be received into evidence; (2) that all the evidence when viewed in its aspect most favorable to the defendant Chicago and North Western so overwhelmingly favors the plaintiff, that judgment should be entered in favor of the plaintiff and that the cause should be remanded for a consideration of the issue of damages only; and (3) that the trial court

erred in failing to give the jury certain instructions tendered by the plaintiff.

We affirm.

The evidence presented at trial indicated that there exists a passenger terminal building designed, erected, owned and maintained by the defendant Chicago and North Western. This passenger terminal building, located at Canal and Washington streets in Chicago, is a two-story structure which extends from the northwest to the southwest corners of the intersection and west above Washington street. At the eastern face of the terminal above Washington street there are four pillars 4 feet 8½ inches on each side which support the structure and form two tunnels for traffic to pass in an eastern direction on Washington street. Between the tunnel exits on the eastern side and extending between the two middle pillars is a parapet wall approximately 33 feet in length and 3 feet 9½ inches high. Between the two vehicle tunnels and to the west of the parapet wall is a streetcar tunnel incline which has not been in operation since the early 1950's. The parapet wall serves as a barricade to protect pedestrians from tumbling into the streetcar tunnel 30 feet below. There are also parapet walls extending west from the middle pillars on the eastern face which serve the same purpose for vehicles passing through the structure on Washington street. These walls are 4 feet, 1 inch in height and 4 feet, 2 inches thick. The construction and placement of the passenger terminal, supporting structures and the parapet walls were described, outlined and authorized by an ordinance of the City of Chicago in 1906 and by ordinance of the West Chicago Park Commission in 1907 and 1909. The parapet wall and sidewalks to the tunnel approach were specifically provided for in the ordinance of 1909. Construction of the above structures was completed in 1912. In 1915, the Chicago and North Western, in a document entitled "Recommendation for Construction," noted that "this is a very dangerous place and the wall over the tunnel across Washington street at Canal street now obscures vision entirely to the west and a person moving south on Canal street across Washington street is unable to see anything coming from the west until he is south of the wall and right in the path of the vehicle." As a result of the above document, 18 inches were removed from the top of the parapet wall and an iron railing was installed atop thereof.

At trial, the plaintiff testified that she had crossed from the northwest to the southwest corner of Canal and Washington streets on five previous occasions; that the light was green when she started to cross on the instant occasion; and that she was walking south across Washington street, within the crosswalk at a distance of two to four steps from the south center pillar of the passenger terminal when she was struck by the defendant, Mr. McKinney's automobile. Mrs. Perry also testified that she did not

remember looking to the southwest over to the parapet wall as she passed by it nor did she remember looking west down Washington street when she came to the end of the parapet wall. Mrs. Perry further stated at trial that at the time of impact she did not know the color of the crossing light.

The defendant driver, William McKinney, testified that he was travelling east in the left hand lane of the south tunnel under the passenger terminal. The light at Canal and Washington changed to red and he came to a gradual stop six to eight feet behind and to the west of the south center pillar. His view to his left was obstructed because the parapet wall between the two middle pillars was higher than his eyes. Mr. McKinney testified that he was familiar with this intersection and knew there existed a blind spot there for both drivers and pedestrians. When the light changed to green, Mr. McKinney accelerated and a figure came from behind the pillar and into the path of his automobile. He applied his brakes but struck the pedestrian who fell in front of his automobile.

Mr. Roosevelt Canady testified that he was a passenger in the car driven by Mr. McKinney. He stated that when the light changed to green McKinney accelerated and the next thing he knew, a figure darted from behind the pillar and there was an impact. At the time of impact the front fourth of the car had exited the tunnel and impact occurred at the left side of the front fender.

From the exhibits and testimony at trial, it was established that "Look Out For Vehicles" signs were painted on each of the middle pillars. Mr. Christensen, the railroad's bridge engineer, testified that the sign which can be seen looking to the north is readable, but that the sign which can be seen looking to the south is "not easily distinguishable." Mr. Christensen testified that he never made any inquiry as to who placed the "Look Out For Vehicles" signs, but stated that the Chicago and North Western does not place that type of sign.

Mr. Robert Lawton, the Chicago and North Western engineer, testified that he searched the company records in an effort to ascertain who installed or maintained the above warning signs, but found nothing in the records.

Mr. Gordon, a traffic engineer for the City of Chicago, testified that the city had no record of the installation of those signs. Mr. Gordon further testified that prior to the occurrence, traffic lights had been installed at the intersection. Mr. Gordon also explained that "Walk/Don't Walk" signals were installed at the intersection but that these signals were installed subsequent to the occurrence.

■■ Plaintiff first objects to the admission into evidence of the ordinances of the City of Chicago and the West Chicago Park Commission which authorized the construction of the Chicago and North

Western passenger terminal building and supporting structures. We note initially that defense counsel and not the trial court, read the ordinances into evidence. Generally, it is the duty of the court to instruct the jury as to the law and counsel should not be permitted to read ordinances to the jury. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607; *McGinnis v. Cosmopolitan National Bank & Trust Co.* (1969), 114 Ill. App. 2d 113, 252 N.E.2d 56.) In the instant case, however, the record reflects that plaintiff's counsel, although preserving his specific objection to the ordinances being admitted into evidence, did stipulate concerning the manner in which they would be received into evidence. The record reflects that the trial court, citing the small print and length of the ordinances and the condition of the paper due to its age, stated that he would prefer that counsel for one of the parties read the ordinances to the jury because he had trouble reading them. Plaintiff's counsel, although noting his objection to the admission into evidence of the ordinances regardless of who read them, stated that if the trial court was going to permit the ordinances to be received into evidence, he did not object to defense counsel's reading them. As such, plaintiff has waived the right to object to the manner in which the ordinances were received into evidence. *Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 346 N.E.2d 450.

■■ The larger question of whether or not the trial court erred in receiving the ordinances into evidence is a question we will not consider in this appeal. Defendant moved in this court to strike that section of plaintiff's reply brief which argues the propriety of the trial court's ruling which received the ordinances into evidence. We note that this particular contention of error was first raised in plaintiff's reply brief. Plaintiff's post-trial motion and initial brief raise the issue of only the manner in which the ordinances were received into evidence, a question we have previously considered. In neither her post-trial motion or initial brief did plaintiff raise the specific issue of the propriety of the trial court's ruling receiving the ordinances into evidence. The Civil Practice Act provides that a "post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof* * *." (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(2).) If a party fails to meet this standard of specificity the alleged error is waived on appeal. (*Keene v. City of Chicago* (1974), 17 Ill. App. 3d 464, 308 N.E.2d 244; *Manns v. Stein* (1968), 99 Ill. App. 2d 398, 241 N.E.2d 691.) Furthermore, Supreme Court Rule 341 provides that points not argued in appellant's initial brief are waived and may not be raised in the reply brief or oral argument. (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7); *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 332 N.E.2d 532.) For the above reason, it is our decision that defendant's

motion to strike that part of plaintiff's reply brief raising the issue of the propriety of the trial court's ruling receiving the ordinances into evidence is hereby granted.

Plaintiff, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, next argues that the evidence viewed in its aspect most favorable to the defendant Chicago and North Western so overwhelmingly favors the plaintiff that judgment should be entered in favor of the plaintiff and the cause be remanded for trial on the issue of damages only. We disagree. Viewed in its aspect most favorable to the defendant, the evidence presented at trial indicated the following: that the passenger terminal building was constructed in conformance with the ordinances authorizing its construction; that there were crossing lights and signs warning passengers of vehicles at the intersection; and that there was a need for both the parapet wall and side walls due to the streetcar tunnel.

Although the railroad itself recognized in 1912 that a dangerous condition existed due to the height of the parapet wall, the railroad took corrective action in 1915 and lowered the height of the wall by 18 inches. Furthermore, considering the plaintiff's height (5'3"), the height of the parapet wall (3'9-½"), and the tunnel wall to the left of Mr. McKinney's vehicle (4'8"), it is entirely possible that the jury could have found that Mr. McKinney's automobile was visible to the plaintiff and that no blind spot existed. In viewing the evidence in its aspect most favorable to the defendant Chicago and North Western, we do not find that it so overwhelmingly favors the plaintiff that no other verdict could stand.

■■ Plaintiff next argues that the trial court erred in refusing to give certain instructions tendered by the plaintiff. The first contention of error in this regard concerns the trial court's failure to give the plaintiff's issues instruction, instruction No. 32(a). This instruction, in pertinent part, stated that the plaintiff claimed that "the defendant, Chicago and North Western, was negligent in one or more of the following respects: failed to provide warning to pedestrians with respect to oncoming traffic; maintained the supporting structure and parapet walls of its train structure in such a fashion as to obstruct the vision of pedestrians and vehicular traffic." In the issues instruction given to the jury, the trial court deleted that part of the above instruction concerning warning to pedestrians and instructed the jury merely that plaintiff claimed the defendant was negligent in creating or maintaining its structure so as to obstruct the vision of pedestrians. It is our decision that in so doing the trial court committed no error. The record indicates that the plaintiff had crossed this same intersection several times before and was aware that this intersection was heavily travelled by vehicles. The record further shows that there were traffic signals and "Look Out For Vehicle" signs at

the intersection. A party has a right to have the jury instructed on his theories of recovery (*Glendinning v. Formiller* (1973), 14 Ill. App. 3d 291, 302 N.E.2d 408 (abstract)), but there must be an evidentiary basis for each theory of recovery. (*Wrighthouse v. Brown* (1964), 52 Ill. App. 2d 191, 201 N.E.2d 752.) In light of the evidence, warning as to approaching vehicles was not an issue and therefore no error was committed in failing to so instruct. (See also *Reivitz v. Chicago Rapid Transit Co.* (1927), 327 Ill. 207, 158 N.E. 380.) The real issue at trial was whether or not the railroad built and maintained its passenger terminal so as to obstruct the view of pedestrians and vehicles and the trial court so instructed the jury.

■■ Plaintiff also complains of the trial court's refusal to give her instruction No. 33 which read as follows:

"Prior to and at the time of the occurrence complained of it was the duty of the defendant to maintain the supporting structures of its passenger terminal in a condition reasonably safe for the protection of the users of West Washington Street."

Plaintiff's tendered instruction No. 33 is not patterned after any Illinois Pattern Instruction. It is apparent from the record and plaintiff's brief that this instruction is based upon section 4 of the ordinance of the West Chicago Park Commission enacted on February 14, 1907. In pertinent part, section 4 of this ordinance provides:

"Said Chicago and North Western Railway Company shall design and construct * * * in such a manner as will be suitable for and conform to the requirements of the use of said West Washington Street as and for a boulevard and pleasure way insofar as possible."

Section 4 of the ordinance did not impose the duty set forth in plaintiff's instruction No. 33. It merely ordered the Chicago and North Western to build in such a manner so as to maintain the use of Washington Street as a boulevard and pleasureway. Since the instruction erroneously construed section 4 of the ordinance, it was properly refused. *Scally v. Flannery* (1937), 292 Ill. App. 349, 11 N.E. 123.

■■ Plaintiff next complains of the trial court's failure to give her tendered instruction No. 21, patterned after Illinois Pattern Jury Instructions, Civil, No. 12.04 (2d ed. 1971) (hereinafter cited as IPI Civil):

"More than one person may be to blame for causing an injury. If you decide that [one or both of] the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame."

It is apparent from the Illinois Pattern Jury Instructions "Notes on Use" (IPI Civil No. 12.04, Notes on Use, at 75) that IPI Civil No. 12.04 should

be used only where the negligence of a person who is not a party to the suit may have concurred or contributed to cause the occurrence. (See also *Miyatovich v. Chicago Transit Authority* (1969), 112 Ill. App. 2d 437, 251 N.E.2d 345.) In the instant case neither the defendant nor the plaintiff, in their pleadings or in the evidence presented, argued that a third party was responsible for the accident. Although there is evidence that the City of Chicago did not install "Walk/Don't Walk" signals until after the accident this factor is of a minor character and of itself would not authorize the giving of the above instruction. We believe that at the very least the trial court was in a better position to judge the effect of this factor than this court on review. It is true that ordinances of the City of Chicago were read to the jury. But these ordinances were simple enabling ordinances introduced into evidence for the purpose of showing that the passenger terminal was not an obstruction. The ordinances set forth no requirements as to safety precautions to be taken by the City of Chicago at the intersection involved. Under these circumstances the trial court committed no error in failing to give plaintiff's instruction No. 21.

Plaintiff also complains of the trial court's refusal to give her instruction No. 28 which read as follows:

"There was in full force and effect in the State of Illinois before and at the time of the occurrence in question a certain statute which provided:

'At all of the railroad crossings of highways and streets in this state, the several railroad corporations in this state shall construct and maintain said crossings, and the approaches thereto, within their respective rights-of-way, so that at all times they shall be safe as to persons and property.'

The structure on Washington Street referred to in this case is a crossing within the meaning of the statute.

If you decide that the defendant violated the statute before and at the time of the occurrence complained of, you may consider that fact together with all the other facts and circumstances in evidence in determining whether or the defendant was negligent before and at the time of the occurrence."

The above instruction is based upon section 8 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1975, ch. 114, par. 62) and was set out in the form required by IPI Civil No. 60.01.

■■ Assuming, without deciding that the defendant's passenger terminal building is included within the definition of crossing as used in the above statute, we nevertheless believe that the trial court properly refused the above instruction. If judicial interpretation has modified the language of a statute or ordinance, such modification must be reflected in the instruction. (*McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d

459, 227 N.E.2d 764; *De Legge v. Karlsen* (1958), 17 Ill. App. 2d 69, 149 N.E.2d 491.) As used in section 8 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1975, ch. 114, par. 62), the word "safe" and the word "approaches" have both been judicially construed. (See *McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d 459, 227 N.E.2d 764.) Since plaintiff's tendered instruction No. 28 did not reflect this judicial interpretation, it is our decision that the trial court committed no error in refusing plaintiff's instruction No. 28.

Plaintiff further complains of the trial court's failure to give her tendered instruction No. 13, IPI Civil No. 15.01:

> "When I use the expression 'proximate cause', I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

Instead of the above instruction, the trial court instructed the jury as follows:

> "When I use the expression 'proximate cause' I mean a cause which in natural or probable sequence produced the injury complained of."

■■ IPI "Notes on Use" indicate that plaintiff's instruction No. 13 should be used only when there is evidence of a concurring or contributing cause to the injury or death. (IPI Civil No. 15.01, Notes on Use, at 93.) For reasons previously stated, we do not believe there is present significant evidence that a third person not a party to the suit was a contributing cause to the injury. It is true that two defendants were sued and that the plaintiff presented evidence as to the liability of both. However, in other instructions given, the jury was unequivocally instructed that, if they felt the evidence so warranted, they could find both defendants liable. Through the instructions given, the jury realized that there could have been more than one proximate cause to the accident. Although it was perhaps preferable to give plaintiff's instruction No. 13, in light of the other instructions given, no error was committed by the trial court's failure to do so.

■■ Plaintiff also complains of the trial court's failure to give her tendered instruction No. 20, which read as follows:

> "The owner of property abutting a public crosswalk is under a duty to exercise ordinary care not to create or maintain an unsafe condition which would interfere with the customary and regular use of the walk."

The above instruction is identical to IPI Civil No. 135.01 with the exception of the words "or maintain" which are not included in the pattern instruction and the substitution of the word "crosswalk" for

sidewalk. Assuming without deciding that the above instruction pertains to crosswalks as well as sidewalks, the cases which have discussed IPI Civil No. 135.01, involve situations in which the property owner alters the sidewalk or creates some obstruction thereon. (See *Kellems v. Schiele* (1938), 297 Ill. App. 388, 17 N.E.2d 604; *Sweat v. Aircraft & Diesel Equipment Corp.* (1948), 335 Ill. App. 177, 81 N.E.2d 8; but see *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369.) In the instant case, defendant neither altered the sidewalk nor created any obstruction thereon in the sense contemplated in IPI Civil No. 135.01 and we therefore believe that the instruction was properly refused.

In support of her contention that the trial court erred in refusing her instruction No. 20, plaintiff cites *County of Henderson v. Chicago, Burlington & Quincy R.R. Co.* (1926), 320 Ill. 608, and *City of Chicago v. Pittsburg, Cincinnati, Chicago & St. Louis R.R. Co.* (1909), 146 Ill. App. 403. However, these cases have no application to the instant case. They discuss the duty to maintain and repair a railroad crossing in a state of disrepair and the party responsible for the making of these repairs. No evidence of disrepair of the structure near the intersection was presented in the instant case.

■■ Plaintiff's final contention of error concerning the instructions tendered to the jury concerns the trial court's failure to give her tendered instructions Nos. 25 and 26. These instructions, patterned after IPI Civil No. 60.01, informed the jury that certain ordinances were read into evidence during trial and that if the jury decided that the defendant complied or failed to comply with the ordinances in question, that the jury could consider that fact together with all the other facts and circumstances in determining whether the defendant was negligent. The ordinances read to the jury during trial are enabling ordinances which authorized the building of defendant's passenger terminal in a manner which is structurally sound and which preserves as much as possible the character of the streets in the area. The IPI "Notes on Use" indicate that IPI Civil No. 60.01 "should be given only where the evidence would support a finding that the injury complained of was proximately caused by a violation of a statute or ordinance intended to protect against such an injury* * *." (IPI Civil No. 60.01, Notes on Use, at 251. See also *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.) After considering the ordinances as a whole and the other evidence offered at trial, we find first, no evidence that the Chicago and North Western violated any provision of the ordinance and second, that the ordinances are not designed to protect against this type of injury. The trial court did not err in refusing to give the instruction.

■■ Instructions are to be considered as a series (*Winston v. Chicago*

*Transit Authority* (1971), 2 Ill. App. 3d 151, 276 N.E.2d 65) and the jury charge is sufficient when, considered as a whole, it fairly and correctly states the law and does not mislead the jury. (*Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) Considering the instruction given, we believe that the jury was fairly and correctly instructed. In pertinent part, the jury was instructed that the Chicago and North Western owed plaintiff a duty of ordinary care for plaintiff's safety and was instructed that ordinary care was that of a reasonable person and for the jury to decide. The jury was further instructed that plaintiff claimed the Chicago and North Western had violated this duty of care by creating and maintaining its structure in such a fashion so as to obstruct the vision of pedestrians and drivers and that this violation was a proximate cause of plaintiff's injury. The jury was further instructed that these were questions for them to decide. We find no reversible error in any of the trial court's rulings refusing plaintiff's tendered instructions, and considering the charge as a whole, believe the jury was fully and properly instructed as to the applicable law.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

GOLDBERG, P. J., and O'CONNOR, J., concur.